OLAVA M. HANSEN, APPELLANT, V. R. C. SMIKAHL ET AL., APPELLEES.

113 N. W. 2d 210

Filed February 9, 1962. No. 35098.

Heaton & Heaton, for appellant.

*Peetz & Balderson* and *Joel E. Babcock,* for appellees.

Heard before CARTER, MESSMORE, YEAGER, SPENCER, BOSLAUGH, and BROWER, JJ.

MESSMORE, J.

This is an action in equity brought in the district court for Cheyenne County by Olava M. Hansen, plaintiff, against R. C. Smikahl and Margaretha Smikahl, husband and wife, and Arthur Miller and Bethal Miller, husband and wife, defendants. The purpose of the action was to enjoin the defendants from interfering with the plaintiff and her tenants as to the right of ingress and egress to and from her land, to require the defendants to remove from their land all obstructions which prevent the plaintiff from having ingress and egress to and from her land to U. S. Highway No. 30, and to grant the plaintiff an easement of necessity across the defendants' land to U. S. Highway No. 30. The trial court dismissed the plaintiff's petition. The plaintiff filed a motion for new trial which was overruled, and the plaintiff perfected appeal to this court.

The record shows that on March 5, 1958, the plaintiff entered into a contract with the Smikahls to purchase a tract of land lying within Section 33, Township 14 North, Range 49 West of the 6th P. M., in Cheyenne County. The width of the land north and south is 56 feet, and the length of the land east and west is 267 feet. The plaintiff gave a check for $200 as a down payment. On August 1, 1958, Smikahls executed a warranty deed to this property to the plaintiff. On the property the plaintiff purchased there were two houses and four trailer lots with a patio for each trailer lot. The water lines, sewer lines, electric wiring, and gas lines to serve the trailers were all to the north of the plaintiff's property. The patios were made of concrete, and there were sidewalks from each of the patios to the north. The fronts of the trailer lots faced to the north. The two houses were west of the trailer lots. The entrance

to the large house was to the south, and the entrance to the smaller house was to the east and south. There were gates leading from the trailer lots to the north, but none to the south.

When the plaintiff purchased her land, there was a drainage ditch to the south of her property, and also a fence at that location. There were no improvements or trailer lots north of her property up to U. S. Highway No. 30. When the plaintiff purchased her property, all of the trailer lots were occupied, and the occupants of the trailers and houses parked their cars to the north on Smikahls' land. The trailers that entered onto or left the plaintiff's property went to the north to U. S. Highway No. 30. That was the only method of getting the trailers into and out of the trailer lots on the plaintiff's property, and there is no other method at this time. Prior to the time the plaintiff entered into the contract to purchase the property, she had a conversation with Dr. Smikahl, and also at the time the contract to purchase the property was prepared at a lawyer's office. The plaintiff testified that in these conversations Dr. Smikahl promised the plaintiff that she could use the north part of his property to permit trailers to go north to U. S. Highway No. 30, and her tenants would be allowed to park their cars north of the plaintiff's boundary line on Smikahls' property. After the plaintiff purchased her property, the Smikahls erected a barbed-wire fence running east and west on their property and blocking off the property of the plaintiff. After the fence was erected, all of the tenants occupying the plaintiff's trailer lots moved out, except one, and in order to get out they had to take the fence down.

The land of the plaintiff, purchased by her from the defendants Smikahl, is completely surrounded by land owned by Smikahls and others.

At the time the deed was delivered by the Smikahls to the plaintiff, there was also executed a contract for

the mutual use of the water, electric, and sewer facilities.

Theodore J. Kosemund testified that he owns a trailer lot in Smikahl's Addition and has lived there since 1955 or 1956. This lot is directly south of the east trailer lot now owned by the plaintiff. While he lived there, the trailers occupying the trailer lots owned by the plaintiff came in and out of Smikahls' land lying north of the plaintiff's property. Cars for the trailer tenants were always parked on the Smikahl land. This witness testified that there is no method for trailers to get in and out of the plaintiff's property without crossing the land of the Smikahls on the north; that to do so they would have to take the fence down; that it would be impossible to move a trailer out of the east trailer lot on the plaintiff's property because his trailer is parked directly south of this east trailer lot; nor could a trailer be moved out to the east because the road in that location is only 30 feet wide.

The plaintiff's daughter owns Trailer City which is south of the plaintiff's property. The road south of Trailer City goes to the county road to the west, and has access to U. S. Highway No. 30.

The plaintiff's daughter testified that she purchased Trailer City from Lester Campbell who purchased it from Dr. Smikahl, and that the doctor acted as her agent. There are 52 trailer lots in Trailer City. The plaintiff's daughter also owns three trailer lots in the same row as Kosemund's trailer lot which she purchased after she had purchased Trailer City. There is a private road on her property which is used by her tenants, and a road to the west which is a county road. Since her mother bought the property, the mother has put in sidewalks and replaced some worn out sidewalks on the trailer lots. The trailer lots have a front and a back, and the trailers have to be put on the trailer lot from the front. The gas line is on the north, the water and sewer lines on the west, and the concrete patios on the east

side of the trailer lots which is the side on which the trailer doors open. The plaintiff's daughter further testified that there was no way to put a trailer on the trailer lots from the south; that before trailers could be put on the trailer lots from the south it would be necessary to completely change all of the fences, the water, sewer, electrical and other hookups, and to tear up the patios and put them on the other side of the trailers; and that this would cost $500 for each trailer lot. The findings of the trial court are in agreement with the testimony of this witness as to the cost of changing the trailer lots. The plaintiff's daughter further testified that at the time her mother purchased the trailer lots the tenants' clothesline was on the Smikahl property north of the west house; that there are 13 power or utility lines running east and west on the south side of her mother's property with one pole to each trailer lot; that there are six poles in all, counting two REA poles; and that there are two trees to the south and east on each trailer lot.

On redirect examination this witness corroborated the testimony of her mother with reference to the conversations had with Dr. Smikahl; and further testified that insofar as her mother's property is concerned, it would be necessary to use the Smikahl property to get a trailer onto the trailer lots; and that it would take at least 40 feet of roadway on the Smikahl property to get a trailer in and out.

Sidney J. Simmerman is the owner and operator of Sid's Mobile Home Towing Service. His business is moving trailer homes onto and out of trailer lots. He testified that he always hooks onto a trailer at the front, and backs them onto the trailer lots on the property owned by the plaintiff; that he has moved 10 or 12 trailers onto this property; that it simply is not possible to move any trailer onto her property except by going across the Smikahl property from the north; and that he

always did just that, before and after the plaintiff purchased her property.

Leland Frickey lived in a trailer home on the east trailer lot of plaintiff's property from May 1957 until late summer of 1960. He testified that the only way he could get in and out of that lot was across the land of Smikahl to the north. He moved out when Smikahls put up the barbed-wire fence at the end of the summer of 1960. He had to take the barbed-wire fence down to do it. When called in rebuttal this witness further testified that it would be impossible to get a trailer out of the trailer lot he formerly lived on to the south because of the Kosemund property, to the west because of the trees, and to the east without removing the fence on the farmer's land across the road to the east.

Dr. Smikahl testified that it was possible to get trailers in from the south onto the plaintiff's property; that the use of his land to the north of her property was permissive only; that at the time the contract was prepared in the lawyer's office the plaintiff's daughter was not present; that the only discussion had with the plaintiff was that the plaintiff wanted to buy some more land from him and he would not sell any more; and that the plaintiff wanted to know what was going to be done with the cars parking on the north and the doctor told her as long as he was not going to use that ground they could leave them sit on the ground like they were, but he would not sell her any more land. He further testified that the land could be used by the plaintiff until he wanted to use it, and when he wanted to use it those occupying it would have to vacate. He further testified that he sold property to the north of the plaintiff's property to the defendants Miller; and that he fenced the property to the north and denied the plaintiff its use. Dr. Smikahl further testified that he was familiar with the general area marked as Road No. 6 on exhibit No. 1 where it turns approximately at the east end and goes south, which road comes from the west end and is on

the county line; that the area at the east end where this road turns to the south is not built up; that the roadway in that area is wider than 30 feet; that a person could run down 200 feet and over, then straighten up and back a trailer into the plaintiff's trailer lots; that the lots are 39 or 40 feet wide; and that he had observed trailers backing in from that area, and personally had caused trailers to come onto those lots from the south. He further testified that to change the trailer lots so that trailers could come in from the south would cost from $20 to $25 for each trailer lot.

On cross-examination this witness testified that trailers could get out of the plaintiff's property onto his private road to the east; that he sold the property to the plaintiff specifically for the parking of trailers; and that if she could not get the trailers in and out, the entire value of the property would be abolished. He admitted that trailers moved in across his property to the trailer lots on the plaintiff's property.

Harry Schwank testified that he had lived in a trailer a good many years and had moved it about from place to place; that he had a 29-foot trailer and he could pull it in from the south and park it on one of the lots on the plaintiff's property; and that a 38-foot trailer could be put on these lots which are approximately 39 feet, and the lot could still be utilized. This witness was a tenant of Smikahl's in 1951, which was 7 years prior to the time the plaintiff purchased her property. When he lived there there was no ditch, no fence, no sewer, no sidewalks or patios, and no utility connections. His trailer at that time was 27 feet long, and he pulled it in from the south to what is now the west trailer lot of the plaintiff's property. He further testified that he could not pull into that lot from the south without pulling out onto Smikahls' land to the north.

Arthur Miller testified that he came to Sidney in 1960 and contracted to purchase the land lying north of the plaintiff's property from Smikahl, and the purchase

had not been completed. After he contracted to purchase this property, he observed that the plaintiff's tenants parked their cars to the north of her property and they drove to the highway over the land of Smikahl which he was buying. He helped Smikahl put up the barbed-wire fence. He has objected to the title as being unmerchantable because of this litigation.

This case is triable de novo on the record before us.

The assignment of error necessary to a determination of this appeal is whether or not the judgment of the trial court is contrary to the evidence and the law.

In Badura v. Lyons, 147 Neb. 442, 23 N. W. 2d 678, this court said: " 'A way of necessity is an easement arising from an implied grant or implied reservation; it is the result of the application of the principle that whenever a party conveys property, he conveys whatever is necessary for the beneficial use of that property and retains whatever is necessary for the beneficial use of land he still possesses. A way of necessity usually arises where there is a conveyance of a part of a tract of land of such nature and extent that either the part conveyed or the part retained is entirely surrounded by the land from which it is severed or by this land and the land of strangers. It is a universally established principle that where a tract of land is conveyed which is separated from the highway by other lands of the grantor or surrounded by his lands or by his and those of third persons, there arises, by implication, in favor of the grantee, a way of necessity across the premises of the grantor to the highway. In other words, if one grants a piece of land in the midst of his own, he thereby impliedly grants a way to reach it.' 17 Am. Jur., Easements, § 48, p. 959." Language of similar import appears in 17A Am. Jur., Easements, § 58, p. 668.

The case of City of Bismarck v. Casey, 77 N. D. 295, 43 N. W. 2d 372, quotes Badura v. Lyons, *supra,* as above set forth. It also cites the case of Douglas v. Jordan, 232 Mich. 283, 205 N. W. 52, 41 A. L. R. 1437, wherein

the Supreme Court of Michigan said: "'Where the owner of land conveys a parcel thereof which has no outlet to a highway except over the remaining lands of the grantor or over the land of strangers, a way of necessity exists over the remaining lands of the grantor.'"

In the case of Waubun Beach Assn. v. Wilson, 274 Mich. 598, 265 N. W. 474, 103 A. L. R. 983, the court said: "A way of necessity is just what it purports to be, a way arising by implication of law out of the necessities of the case, * * * a way of necessity is based upon an implication of an intended grant and the use of it is based entirely upon such implication or consent to its use." There are many other cases, too numerous to cite, holding as above stated.

No reasonable explanation was given by Dr. Smikahl with reference to how the trailers could be backed in from the south onto the plaintiff's trailer lots. The evidence shows that Dr. Smikahl testified that he sold the plaintiff this property for a specific purpose, and further, that in the event ingress and egress to and from the plaintiff's property would be such that trailers could not be parked thereon, the value of this property would be abolished.

The defendants Smikahl contend that the conversations heretofore mentioned between Dr. Smikahl, the plaintiff, and her daughter, relating to the promise allegedly made by Dr. Smikahl as to the use of the Smikahl land north of the plaintiff's land for the purpose of permitting mobile homes or trailers to enter to and from the Smikahl land onto the plaintiff's trailer lots are in violation of the parol evidence rule, for the reason that such conversations tend to alter the consideration contained in the contract and the deed between the Smikahls and the plaintiff.

The trial court permitted these conversations into evidence, but determined by its judgment that such

conversations were inadmissible and would violate the parol evidence rule.

Even assuming the defendants' contention to be correct, under the evidence adduced, excluding these conversations and considering the evidence other than such conversations and the authorities heretofore cited, no other conclusion can be reached than that the plaintiff is entitled to an easement of necessity north of her land to U. S. Highway No. 30 for the purpose of moving mobile homes and trailers in and out of her land to U. S. Highway No. 30, and parking cars of her tenants on such land north of her land which is owned by the Smikahls. When Smikahl sold the land to the plaintiff, trailers and mobile homes had been coming onto these trailer lots from the north, and cars were parked thereon. These trailer lots were built by Dr. Smikahl. He sold the land to the plaintiff for a specific purpose, and he knew that for the plaintiff to operate a successful business it would be necessary to use this land for the purposes heretofore indicated.

It is apparent from the testimony of Arthur Miller that he is not an innocent purchaser for value of the land north of the plaintiff's land up to U. S. Highway No. 30. The Millers refused to proceed with the purchase of this land due to this litigation.

There is evidence to the effect that the plaintiff should have an easement north of her property on the Smikahl land up to U. S. Highway No. 30, of a width of 40 feet. On this phase of the case we believe the easement of necessity should be fixed by agreement of the parties and, if the parties are unable to agree, the trial court should fix this easement. If it should be necessary to take further evidence on this phase of the case to fix the easement of necessity, then this should be done. In fixing this easement of necessity over the Smikahl land, it should be fixed with the least detriment to the defendants Smikahls' land.

We conclude that the judgment of the trial court

should be reversed and the cause remanded with directions to proceed in conformity with this opinion.

REVERSED AND REMANDED WITH DIRECTIONS.

SIMMONS, C. J., participating on briefs.