LOLANI SESE, MEAFOU SESE, SU'A SCHUSTER,
STARR SCHUSTER, and the ESTATE OF ALEKI NOA,
Plaintiffs

v.

MISIPELE LEOTA and TAGIILIMA LEOTA, Defendants

High Court of American Samoa
Land & Titles Division

LT No. 5-88

November 10, 1988

25

Before KRUSE, Associate Justice, TAUANU'U, Chief Associate Judge, and TUIAFONO, Associate Judge.

Counsel: For Plaintiffs, Asaua Fuimaono
For Defendants, Togiola T.A. Tulafono

A case could not have been better presented, than the facts giving rise to this dispute, highlighting the urgency in need for regulatory intervention by the legislature to control the orderly sale of lands in the territory.

A growing number of individuals have managed to procure registration to large tracts of land, in individual ownership, through proceedings before the Territorial Registrar. Invariably, these tracts are then immediately offered for sale, in a piecemeal fashion, in lots of different shapes and sizes. More often than not, such sales are undertaken without any regard whatsoever for subdivision planning. There are on file with the Clerk's office, disputes between competing buyers

of overlapping pieces of land[1] as well as disputes concerning the very same piece of land being sold twice.[2] Additionally, as may be gathered from the facts here, land subdivisions have resulted without any thought given to the orderly reservation of rights of way, not only for the access of people, but also for the convenient development of such public services to homesites as utility, telephone, water, and sewer lines. It is inevitable with this sort of individualized land development that the buying public frequently suffers while the courts (as well as utility supplying and development planning agencies) are left to work out, also in a piecemeal fashion, practical solutions to what is generally an impractical mess. The emerging picture is usually the kind of hodge-podge land development that gives a town planner nightmares. In terms of undeveloped lands, therefore, it is perhaps very apt for the Fono to take a hand in the matter of overall land development, by regulating subdivisions and coordinating individual development efforts against some territorial planning standards. It goes without saying that the territory's real property resources are limited and are in need of more meticulous use management.

## Facts

The parties hereto, save for the plaintiff estate, were, at different times, purchasers of land from the late Aleki Noa (hereinafter referred to as the "grantor"). In 1985, two of the plaintiffs, the Schusters, had purchased a third of an acre from grantor as an "investment." The Schusters have since become landlocked as the result of a subsequent sale to defendants, Misipele and Tagi'ilima Leota. With the subsequent and strategic placement of certain structures by their fellow grantees located nearer to the main road, coupled with an equivocal stance taken by the grantor, the Schusters now find, in terms of ready access, that their investment could just as well be in the midst of the Florida Everglades.

---

[1] See Moon v. Falemalama, 4 A.S.R. 836 (1975).

[2] See Manuma v. Bartley, LT No. 15-86 (1986).

27

The law is very clear, a landlocked grantee in the Schusters' circumstances is guaranteed access to and from his property one way or the other. (More will be said on this below). The facts before us, however, typify the unusual possibilities with individualized land development.

Grantor had for sometime prior to 1983 secured registration to some nine acres of land in the county of Tualauta. The land at one extreme is binding on the Iliili/Airport Highway while at the other it is binding on the Fogagogo Road. On the Iliili/Airport side, the road frontage is relatively narrow compared to the Fogagogo frontage. Although a similar access mess arose with the Fogagogo frontage, the same has been resolved with the aid of the Survey Office and some cooperative grantees. Not so with the opposing and the narrower road frontage.

Shortly after acquiring registration, grantor first sold, on the Iliili/Airport side, a large parcel which encompassed much of the road frontage, to one Ruby Grisard. The remaining lands on towards the Iliili direction were subsequently sold by grantor in three separate lots. The roadside lot was sold to one Denny Spencer and, immediately inland to him, another lot was parcelled out and sold to the Seses in 1986. To the rear of the Sese lot, is the Schusters' land which they had acquired from the grantor in the previous year, 1985. At the time the Schusters had acquired their piece, they shared a partial common boundary with the defendants who are located to the Iliili side of the Schusters. Beyond this common boundary line and extending to the main highway, there was open space retained by the grantor. The parcel held by the defendants at this time had been conveyed to them by the grantor in the year 1983.

While this state of affairs remained, the Schusters regarded this open land between them and the defendants as forming part of the right of way, traversing towards the highway following the Iliili boundary line of the subdivision. Mr. Schuster testified that grantor at the time of sale, physically pointed out to them their access accordingly.

The defendants also used the same access for ingress and egress onto and off the main highway up

to a point when their right of way forked towards their property and away from the Seses' and the Schusters' boundary direction. Defendants similarly testified that their right of way was physically pointed out to them by the grantor after they had first moved into the area.

The testimony according to the defendants went on to state that the grantor in 1987 found himself in need of money, and after persistent offers to defendants, another land sale was struck between them. This conveyance not only extended defendants' holding towards the direction of the main road but included the open area of land referred to above. Thus the inland part of the right of way as the other grantees knew it had been sold by the grantor, apparently without their knowledge. For a brief while thereafter, the Seses got to their lands without complaints while the Schusters rarely visited theirs.

With the matter of "pule" over the land remaining confused, the inevitable land dispute occurred. The evidence did not disclose what first fused the dispute but defendants asserted unequivocally their "pule" by erecting a rather imposing cement block wall extending all along what has now become their common boundary line with the Schusters and the Seses. Defendants have however allowed the Seses some ten feet along the boundary as a turning area into their land.

When defendants began to restrict access, plaintiffs complained to the grantor who is said to have attempted to undo the conveyance to defendants. The testimony was conflicting here. The grantor's widow thought that her husband wanted to undo a wrong committed upon the Schusters because the conveyance purported to dispose of their right of way. On the other hand, defendants testified that grantor was well aware of what he was offering to sell. He had advised defendants before the purchase that the Schusters would be provided an alternative access over the Sese property which, grantor had claimed at the time, remained unsold.

In fact, at this point in time the grantor had already sold the Seses their property as evidenced by their sales agreement. Subsequently, the grantor died and the matter finally found its way to court. The Seses testify that they are greatly

29

inconvenienced with a restricted turning area, while Schuster complains of no access at all.

### Discussion

Where a subdivided piece of land sold is found to be without access to a road, an easement arises by implication over the other part or parts of the land subdivided, if the existence of the easement is strictly necessary for the beneficial use of the piece sold. Hansen v. Smikahl, 113 N.W.2d 210 (Neb. 1962). In other words the easement arises when the only practical means of ingress and egress to and from the landlocked parcel (the dominant tenement) is over those other parcels,[3] sold or retained by the same grantor, which are nearer to the main road (the subservient tenement). The easement arising is one of "necessity" and is based upon the presumed intention of the parties to the conveyance. Daywalt v. Walker, 31 Cal. Rptr. 899 (Cal. App. 1963). It has been said the that "[t]he doctrine is based upon public policy, which is favorable to full utilization of land and the presumption that parties do not intend to render land unfit for occupancy." Condry v. Laurie, 41 A.2d 66, 68 (Md. App. 1945). This public policy against useless landlocked lands may thus be seen as a minimal measure of land development imposed on the parties to a land transaction by operation of law, and thus the implication of the easement is not dependent upon the intent, or lack of intent, of the parties. Whenever a party conveys land he is presumed to convey whatever is necessary for the beneficial use of that land and at the same time to reserve whatever is necessary for the beneficial use of the land which he retains.

An easement of necessity as it name suggests will exist only as long as the necessity continues. Condry v. Laurie, supra; Martinelli v. Luis, 1 P.2d 980 (Cal. 1931); Waubun Beach Association v. Wilson, 265 N.W. 474 (Mich. 1936).

---

[3] The element of necessity is unaffected by the fact that a shorter and more convenient manner of access to the main highway could be provided over the adjoining land of a stranger. Calhoun v. Ozburn, 198 S.E. 706 (Ga 1938).

30

On the facts, the application of the law should be straightforward. But there is a further aspect to this land development that must be considered.

Firstly, the government's chief surveyor testified that he had drawn up some three or four years ago a composite map for the grantor to ascertain the extent of his sales and to aid in resolving some rights of way problems also existing with landlocked grantees to the Fogagogo road. The composite reveals the nine acre tract as an untidy jigsaw puzzle with a missing piece in the middle (an insignificant part of the land unsold and landlocked). The map also shows property lying outside the tract itself. Both plaintiffs are inside the nine acre tract while outside the nine acre tract and adjacent to its Iliili boundary, lie the access way as well as the Leota lots which have merged with what was the inland part of the access. These relevant portions outside the nine acre tract are said to be also claimed by a third party who contests grantor's claim to title.

Defendant therefore argues as follows: In order to claim an easement by necessity there must have been "unity" in title at some time over the dominant and servient parcels followed by a severance thereof; that since title to the portions sold to defendant is contingent and subject to attack by a third party, it may not be said that there has been this unity and a severance in title in order to give rise to a dominant/servient relationship.

Additionally, defendants claim that an implied easement can only arise within the limits of the nine acre tract since this is the only parcel claimed by the grantor which has been registered.[4]

_____

[4] The evidence revealed that at one time the defendants first went upon their land by way of access through Spencer's land within the nine acres' Ili'ili boundary line. The Seses also utilized this way of passage for a short time until Spencer's land was barred by the defendants supposedly on behalf of Spencer. Defendants' testimony was that they are related to Spencer and were initially using his land for access at his sufferance. It was when access was closed through

31

(One of our difficulties in pursuing this possibility is lack of jurisdiction over Spencer although he could have been the subject of proper joinder by any of the litigants had they so desired).

Defendants are correct with their submission on the requirement of unity of title and a severance. We do not agree however with their analysis of the facts and conclusions of law thereby reached.

In our opinion, a conclusion that there was unity in title concerning defendants' lots and plaintiffs' lots is not precluded at this time for the limited purpose of framing the relief sought herein. The facts reveal a common grantor who attempted to convey "his" title to the lands sold whatever that might be. The fact that the nine acre tract was registered in the grantor whereas the Leota tracts are not as yet so registered does not as a matter of law mean that grantor had no title in the Leota lots. Registration of lands in American Samoa does not guarantee indefeasible title to land. The "Torrens" system of recording does not exist in the territory. While registration however, may be better "evidence" of title as a consequence of A.S.C.A. § 37.0103-- which requires any adverse claimants to any proposed registration of lands to file objections within a 60 day period, or in effect be barred from further consideration -- this is not to say that one cannot have title to land unless one first procures registration. As we understand the law, title to individually owned lands arises from circumstances of independent clearing of previously unoccupied virgin bush land by a Samoan claimant. See Leuma v. Willis, 1 A.S.R.2d 48 (1980). It is first use and occupancy that gives rise to title to individually owned land as a matter of law; and it is an assumption based on a faulty premise to say that until a claimant has successfully registered his claim to title that such title is any less as a matter of law. That is, title to individually owned land does not as a matter of law arise by reason of registration, but rather arises through initial use and occupation.

Spencer's that the grantor moved the access turn-in outside, although contiguous to, the nine acre tract's Ili'ili boundary line.

32

On the other side of the coin, we have noted that an easement by implication may not arise over the lands of a stranger. See n. 3, supra. At the risk of overstating the obvious, this legal limitation only arises where the stranger holds absolute title to those affected lands. It would be needless extension of the noted legal limitation (and an unwarranted dilution of the public policy behind the common law) to preclude an implied easement of necessity because of the possibility of claims by a stranger. In a sense, such an attempt would indeed be tantamount to giving sanction to the assumption that title is in the stranger. Merely because there is a contingency that a stranger may contest the grantor's title to part of the subdivided lands it does not follow as a matter of law that the stranger has better title to the subservient tenement so as to defeat the implication of an easement.

We hold that there is neither need nor room for the Court in this instance to be concerned with whether there is a title dispute with a stranger and the determination of that dispute before the relief sought here may be considered. This holding takes into account the following circumstances: the alleged claims by the third party have not been zealously made; the Leotas moved into the area with a bulldozer shortly after acquiring their first lot from grantor in 1983; the right of way was early moved to outside the registered nine acre tract onto the allegedly disputed land; the Leotas have built houses on the area claimed as disputed; and the evidence of a dispute by the third party did not amount to too much more than the allegation by Leota of a dispute, which allegation was offered more in the sentiment of a defense.[5]

On the facts before us, we find there was unity of title and a severance of land giving rise to an easement by implication at common law. We further conclude that the common law doctrine is applicable in the territory by virtue of A.S.C.A. § 1.0201 (4). The public policy behind the doctrine, the beneficial use of lands, must undeniably apply

_____

[5] We imagine that the sentiment would quite obviously be otherwise in the context of an actual case with the third party.

33

to the territory with its limited lands requiring the fullest and most effective use of resources.

### Conclusion

From the discussion above, an implied easement of necessity arises only where it is strictly necessary for the beneficial use of the dominant tenement. <u>Hansen v. Smikahl</u>, <u>supra</u>. Such an easement will only exist as long as the necessity continues. <u>Condry v. Laurie</u>, <u>supra</u>, <u>Martinelli v. Luis</u>, <u>supra</u>, <u>Waubun Beach Association v. Wilson</u>, <u>supra</u>.

On the facts before us, we conclude that plaintiffs Lolani and Meafou Sese and their family have failed to show that they are in fact landlocked. They have been provided a ten foot entrance on the boundary line which in our view provides sufficient access for residential use. Their primary complaint with the defendants' wall was that it restricted the convenience of the dump trucks bringing fill onto their land and impeded those vehicles from backing out of their land so as to be positioned head first towards the main highway. This inconvenience is hardly the stuff that gave rise to the doctrine at common law which talks of "strict necessity" and the possibility of a limited duration for that necessity. The Seses have acquired for themselves a large tract of land which is quite capable of accomodating the turning of vehicles so that they may exit the land directly forward without additionally burdening defendants' land.

In the case of the Schusters, theirs is exactly the sort of circumstance for which the law mandates easements by implication. They have been effectively landlocked by the erection of the stone wall over what was pointed out to them by the grantor as their accessway to the main road. Notwithstanding what the grantor may have said to the Leotas to persuade them to purchase their second lot, given the existence of the necessity, the title conveyed by the grantor to them was subject to the easement by operation of law. Accordingly, the following order will enter and the Court sincerely hopes that the parties will exercise the proper degree of discretion in exacting compliance. The entire wall need not be completely removed and discretion and common sense

34

should address the reasonable convenience of both parties.

It is Ordered that the defendants Misipele and Tagiilima Leota, and all those taking by, through, and under them, are hereby enjoined and restrained from maintaining so much of that stone and concrete wall located on or near their common boundary with the plaintiffs, Su'a and Starr Schuster, which is preventing the plaintiffs from reasonable access to their adjacent property.

The parties shall have judgment accordingly.

