IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

DAHLGREN V. BROOKS

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

GREGG DAHLGREN AND KRISTEN DAHLGREN, APPELLEES,

V.

DENNIS BROOKS, DOING BUSINESS AS COBRA POOL AND SUPPLY ET AL., APPELLANT.

Filed November 28, 2017.    No. A-16-1215.

Appeal from the District Court for Buffalo County: JOHN H. MARSH, Judge. Affirmed.

Mitchell C. Stehlik, of Lauritsen, Brownell, Brostrom, & Stehlik, P.C., L.L.O., for appellant.

Kane M. Ramsey, of Jacobsen, Orr, Lindstrom & Holbrook, P.C., L.L.O., for appellees.

MOORE, Chief Judge, and INBODY and BISHOP, Judges.

MOORE, Chief Judge.

INTRODUCTION

Gregg Dahlgren and Kristen Dahlgren filed a complaint against Dennis Brooks for breach of contract and negligence stemming from the construction of a residential swimming pool and spa. Brooks filed a counterclaim against the Dahlgrens, alleging breach of contract or, in the alternative, unjust enrichment. The district court for Buffalo County found for the Dahlgrens, awarding them $40,770.02 in damages. On appeal, Brooks alleges the district court erred in entering judgment against him and for the Dahlgrens and in failing to entering judgment in Brooks' favor on his counterclaim. He also alleges the court erred in its calculation of damages. For the reasons set forth below, we affirm.

BACKGROUND

In the spring of 2014, the Dahlgrens made arrangements to install an underground pool and spa in their backyard to enjoy that summer. Because Brooks recently installed a pool in their neighborhood, the Dahlgrens contacted him about the costs, feasibility, and completion date of the project. Brooks met with the Dahlgrens at their home in April 2014 at which time they indicated their desire for a pool and spa and where they wanted it located in their backyard. Dahlgrens wanted the pool and spa to be installed in time to be used for the summer of 2014 and discussed the feasibility with Brooks. After Brooks inspected the Dahlgrens' property, the Dahlgrens contracted with Brooks to install a pool and a spa in their backyard.

The contract set forth the cost of the pool and spa, together with various other items such as heat pump, lights, power cover, and spa heater. The "complete installation" included "[e]xcavation and installation of the pool [and spa], plumbing, pump, filter, and manual cleaning equipment. Prices are based on a level lot, easy access, and pre-site approval." The contract price was $79,309. The contract expressly excluded costs associated with "decking & cement, stone, brick, etc.; landscaping; crane; sewer connection; permits, taxes, & fees; and electrical hookups." Brooks required the Dahlgrens to pay the contract in three installments. The Dahlgrens made three payments to Brooks: (1) $28,000 on April 24, 2014, (2) $26,436.33 on May 19, 2014, and (3) $26,436 on June 9, 2014. In total, the Dahlgrens paid Brooks $80,872.33, which was $1,566.33 above the contracted amount.

In early May of 2014, Brooks began construction. When asked "Can you remind me when Mr. Brooks identified the pool and spa would be completed," Gregg replied "We were anticipating early June the pool was to be completed." During Brooks' initial construction, he questioned the Dahlgrens about the "elevation" of their pool. Gregg and Kristen asked Brooks to refer his questions about the project to Kristen's father, Gene McElhinney, a general contractor with over forty-two years of experience in construction. When Brooks initially set the pool's fiberglass shell in the ground, its edge sat above the ground at about knee level, which Gregg found unacceptable. Gregg testified that he directed Brooks to lower the shell further into the ground. Brooks testified he lowered the pool at McElhinney's instruction only after McElhinney agreed that the Dahlgrens would pay the additional costs. McElhinney denied he discussed additional costs with Brooks.

By the end of May--when the Dahlgrens and Brooks had initially planned the project to be nearing completion--Brooks and his employees had set the pool in the ground, but they had not yet stabilized and backfilled dirt around its walls. Prior to completing this work, Brooks left the country for vacation. During his absence, a heavy rain fell. Because Brooks' crew did not stabilize the pool, the rain caused the fiberglass shell to float more than six feet above the hole in which it sat. The standing water in the hole required Brooks to hire a crane to lift the fiberglass shell and allow both the hole and the shell to dry. At some point after the free-floating shell required Brooks' to hire a crane, Gregg asked Brooks to rotate the fiberglass shell so that the pool would face the opposite direction. Gregg testified that Brooks agreed to rotate the fiberglass shell, adding the change in orientation would make the project's plumbing easier to complete and that the additional digging would not be a "big deal." According to Gregg, Brooks did not indicate that there would be additional costs associated with rotating the pool. However, Brooks testified that he rotated the

- 2 -

pool at McElhinney's instruction only after he agreed to the additional costs. McElhinney could not recall such a discussion. After another rain fell just over two weeks later, the Dahlgrens again found a free-floating fiberglass shell in the pool hole. The saturated shell again required Brooks to hire a crane to dry the shell and hole.

By the end of June 2014, Brooks had installed the fiberglass pool shell, spa vessel, and most of the plumbing. However, the project was still not complete. Brooks did no additional work on the project for the remainder of the summer, other than collecting his tools and retrieving a pool filter. On July 21, 2014, Brooks sent the Dahlgrens an invoice for his services in rotating and lowering the pool. A little over a week later, Gregg called Brooks to ask if he planned to finish the pool and spa. Brooks replied by demanding payment from Gregg on the July invoice. According to Brooks, Gregg notified him that he did not believe he owed Brooks for the additional work but that if Brooks would get the pool done, Gregg would think about paying the invoice. Brooks informed Gregg that he would not do further work until the Dahlgrens paid the invoice. The Dahlgrens did not pay the additional invoice, and Brooks did not complete the project and failed to deliver the pool cover for which he billed the Dahlgrens.

At the time that Brooks' work on the pool and spa installation ceased, the Dahlgrens could not use the pool and the spa's jets did not work properly. The Dahlgrens hired Artisan Pools to complete the pool installation. Artisan charged the Dahlgrens $2,848.56 to purchase and install various items necessary for the operation of the pool. In addition, Artisan Pools charged Brooks $3,000 for a pool cover. Artisan did not alter any of Brooks' construction and plumbing, and it did not address the spa jets' deficiencies.

The Dahlgrens hired Douglas Deterding, a pool and spa installation expert, to assess the situation with the spa. Deterding identified that there was not enough flow in the system to allow the jets to work properly. He testified that the number of right angles Brooks constructed in the spa's plumbing would not allow an effective spa circulation system. Deterding additionally found that the piping was incompatible with the pump model for the spa vessel Brooks installed. He testified the only way to fix the plumbing and piping for the spa would be to dig out the shell and to install a proper pump. Deterding indicated that depending on what he found when the Dahlgrens removed the existing spa vessel, the "worst-case scenario" would require complete installation of a new spa. Deterding estimated the cost for completing these repairs was $43,338.02.

The Dahlgrens filed a complaint against Brooks, alleging breach of contract, breach of warranty of fitness for a particular purpose, breach of implied warranty of merchantability, and negligence. In Brooks' Amended Counterclaim, he asked the district court to award him $12,690.63 in damages for breach of contract due to the unpaid invoice dated July 21, 2014. In the alternative, he asked the court for the same amount as restitution for unjust enrichment. Following a trial to the bench, the district court entered a judgment on September 16, 2016, finding Brooks breached his contract with the Dahlgrens, awarding them $11,335.01 in damages, and dismissing Brooks' counterclaim. Upon the Dahlgrens' motion to reconsider, the court entered an order awarding the Dahlgrens $40,770.02 in damages. Brooks filed this appeal.

ASSIGNMENTS OF ERROR

Brooks assigns, restated, the district court for Buffalo County erred in (1) finding Brooks breached his contract with the Dahlgrens, (2) dismissing Brooks counterclaim for breach of contract or, in the alternative, unjust enrichment, and (3) awarding the Dahlgrens' damages for their costs in repairing both the pool and the spa.

STANDARD OF REVIEW

A suit for damages arising from breach of a contract presents an action at law. *Stauffer v. Benson*, 288 Neb. 683, 850 N.W.2d 759 (2014). So too, a quasi-contract claim for restitution is an action at law. *Kalkowski v. Neb. Nat'l Trails Museum Found., Inc.*, 290 Neb. 798, 862 N.W.2d 294 (2015); *City of Scotts Bluff v. Waste Connections of Neb., Inc.*, 282 Neb. 848, 809 N.W.2d 725 (2011). The judgment and factual findings of the trial court in an action at law tried to the court without a jury have the effect of a verdict and will not be set aside unless clearly wrong. *Id.* In reviewing an action at law, an appellate court reviews the evidence in the light most favorable to the prevailing party. *Id.* However, regarding questions of law, an appellate court is obligated to reach a conclusion independent of determinations reached by the lower courts. *Id.*

Amount of damages to be awarded is a determination solely for the fact finder. *Funk v. Lincoln-Lancaster County Crime Stoppers, Inc.* 294 Neb. 715, 885 N.W.2d 1 (2016); *Neb. Nutrients, Inc. v. Shepherd*, 261 Neb. 723, 626 N.W.2d 472 (2001). An appellate court will not disturb the factfinder's damage award if the evidence supports the damage award and it bears a reasonable relationship to the elements of the damages proved. *Neb. Nutrients*, *supra*.

ANALYSIS

*Breach of Contract.*

Brooks argues that the district court erred in finding Brooks breached his contract with the Dahlgrens. The Dahlgrens and Brooks agree that they formed a contract for Brooks' construction and installation of a pool and spa at the Dahlgrens' residence. Although the written contract did not include a specific term for the length of time the installation would require, it did include terms for price, certain enumerated services, and line items of equipment the contract authorized Brooks to purchase. Brooks asserts that because his contract with the Dahlgrens contained no time limitations, failing to complete the pool by late July of 2014 did not result in his breach of the contract. Instead, he claims the Dahlgrens terminated the contract by refusing to pay him. He further claims the court's finding as to breach of contract only related to his construction of the pool and not the spa.

Contract actions that arise from the breach of a duty an agreement imposes on a defendant protect a plaintiff's interest in or right to performance of that defendant's promises. *Thurston v. Nelson*, 21 Neb. App. 740, 842 N.W.2d 631 (2014). Under Nebraska law, with each contract comes an accompanying duty to perform with care, skill, reasonable expediency, and faithfulness the thing agreed to be done. *Id.*; *Lesiak v. Cent. Ag Coop., Inc.*, 283 Neb. 103, 808 N.W.2d 67 (2012); *Schwarz v. Platte Valley Exterminating, Inc.*, 258 Neb. 841, 606 N.W.2d 85 (2000). From our review of the record in a light most favorable to the Dahlgrens, Brooks breached this contractual

duty. Although the Dahlgrens fully paid the amount of the contract, Brooks left the Dahlgrens' pool and spa unfinished in June. When he left the country for a vacation in late May, Brooks made no efforts to protect his work from the elements which could foreseeably damage the construction progress. During his absence, a significant rainfall destroyed much of his progress with the pool's installation. In large part, his actions caused the additional costs with the Dahlgrens' pool for which he later billed them. With regard to the spa, Deterding's testimony at trial revealed that Brooks' installation of the spa's plumbing was incompatible with the vessel he installed. He concluded the spa would not function appropriately absent substantial repairs.

Brooks further breached his duty of care by failing to complete the contract with reasonable expediency. Although the contract contained no term regarding a completion date, Brooks' performance was hardly "reasonably expedient." When the Dahlgrens discussed the pool and spa construction with Brooks in April of 2014, they anticipated Brooks would complete the installation by June of the same year. By the middle of July, after several delays largely caused by Brooks, he had not finished constructing the pool and spa. He never did. The district court's factual findings were not clearly wrong. After viewing the evidence in the light most favorable to the Dahlgrens, we find no error in the court's determination that Brooks breached the contract.

*Defendant's Counterclaim for Breach of Contract and Unjust Enrichment.*

Brooks claims the district court erred in dismissing his counterclaim for breach of contract or, in the alternative, for restitution in quasi-contract. He asserts that the Dahlgrens, through their agent, McElhinney, agreed to lower the pool seven inches into the ground and to rotate the position of their pool for an additional fee. McElhinney denied that Brooks advised that lowering the pool would result in higher cost. McElhinney could not recall whether he had the discussion with Brooks about changing the direction of the pool or whether the Dahlgrens discussed it with Brooks. McElhinney did not recall whether Brooks told him the rotation would result in higher costs. The district court found Brooks failed to establish that he reasonably relied on McElhinney's authority to agree to additional costs. But we conclude we need not determine whether McElhinney had authority to bind the Dahlgrens to additional costs or whether Brooks reasonably relied upon his conversations with McElhinney. Viewing the evidence in a light most favorable to the Dahlgrens, we find Brooks has failed to establish the existence of an additional agreement to rotate and lower the Dahlgrens' pool for an additional fee.

To create a contract, there must be both an offer and an acceptance. *Sticht Ranch, LLC v. Double B.J. Farms, Inc.*, 21 Neb. App. 328, 837 N.W.2d 870 (2013). There must also be a meeting of the minds or a binding mutual understanding between the parties to the contract. *Id.* See also *Ryder v. Ryder*, 290 Neb. 648, 861 N.W.2d 449 (2015). The existence of a meeting of the parties' minds as to the essential terms and conditions of the proposed contract is a fundamental and indispensable basis of any enforceable agreement. *Sticht Ranch*, *supra*. A binding mutual understanding or meeting of the minds sufficient to establish a contract requires no precise formality or express utterance from the parties about the details of the proposed agreement. *Id.* And it may be implied from the parties' conduct and the surrounding circumstances. *Id.*

The record confirms that Brooks agreed to lower the pool when it was several inches above ground and rotate the pool after the heavy rains required Brooks to raise the pool with a crane. However, Brooks failed to show that this work was beyond the terms of the initial contract or that there was an agreement for additional compensation for this work beyond the contract price. The written contract between the parties did not expressly discuss the depth of the pool or its location. Gregg testified that Brooks told him installing the pool to face the other direction might ultimately be easier for him. According to Gregg, Brooks did not indicate that rotating the pool would require additional costs. Although Brooks insists he discussed additional costs with McElhinney, McElhinney has no recollection of that conversation. Brooks did not offer into evidence the invoice that he gave the Dahlgrens for additional work. In fact, he did not offer any evidence of the additional costs he alleges to have incurred from lowering and rotating the pool. Thus, we find Brooks failed to establish a meeting of the minds between the parties necessary for the formation of a contract for additional work beyond the written contract. Viewing the evidence in a light most favorable to the Dahlgrens, we cannot say that the trial court was clearly wrong finding that Brooks failed to prove his counterclaim.

Brooks' claim in quasi-contract for restitution from unjust enrichment also fails. A quasi-contract is not a contract. *City of Scottsbluff v. Waste Connections of Neb.*, 282 Neb. 848, 809 N.W.2d 725 (2011). Quasi-contract claims are restitution claims to prevent unjust enrichment. *Id.* Quasi-contractual obligations do not arise from agreement. *Id.* The law imposes them when justice and equity require the defendant to disgorge a benefit that he or she has unjustifiably obtained at the plaintiff's expense. *Id.* The defendant's liability arises under the law of restitution, not contract. *Id.*

Here, the evidence is at best unclear as to whether or not Brooks provided a benefit to Dahlgrens beyond the terms of the contract. The written contract with the Dahlgrens contains no provisions regarding the depth or location of the pool. Although the contract expressly excluded "cranes," it was Brooks' failure to secure the pool prior to the heavy rains in June that required a crane to raise the pool shell to correct the resulting problems. Brooks' work did not unjustly enrich the Dahlgrens. Rather, Brooks' work was necessary to complete installation of the pool under the contract. Further, Brooks failed to prove the value of any benefit he conferred to the Dahlgrens beyond the terms of the written contract. Viewing the evidence in a light most favorable to the Dahlgrens, we cannot conclude the trial court was clearly wrong in dismissing Brooks' counterclaim for unjust enrichment.

*Damages.*

Brooks contends the district court erred in awarding damages for the installation of the pool *and* spa. Brooks argues the court's order confines its discussion of the breach of contract to Brooks leaving the Dahlgrens' pool unfinished when he left for vacation. He asserts the order is silent as to his installation of the spa. We disagree. The court did not confine its breach of contract findings to the pool. The court specifically accepted Deterding's testimony based upon his experience and consistency with the photographic evidence. Deterding testified only about the deficiencies in the spa plumbing that Brooks installed and the remedial costs.

The court determined the damages included Deterding's estimate, less the cost of a new spa and corresponding freight, which it determined was based upon a "worst-case" assumption that the Dahlgrens did not establish with reasonable certainty. Therefore, the court subtracted $9,180 from Deterding's total estimate of $40,502.82, prior to taxes, resulting a sum of $31,322.82. The court adjusted the taxes on the estimate to $2,036. The court included the Artisan bill relating to the pool completion in the sum of $2,848.56. Altogether, the court found the Dahlgrens' damages totaled to $36,207.36. However, the court mistakenly subtracted an underpayment of $24,872.32 from the damages amount, awarding the Dahlgrens $11,335.02 for Brooks' breach of contract. Following Dahlgrens' motion for reconsideration, the court added $1,562.66 (the amount of the Dahlgrens' contract overpayment), and $3,000 for a replacement pool cover to the original $36,207.36 damage calculation, for total damages of $40,770.02. The evidence supports the court's award of damages, and it bears a reasonable relationship to the elements of damages proved.

## CONCLUSION

The district court was not clearly wrong in its finding that Brooks breached his contract with the Dahlgrens and that Brooks failed to prove his counterclaim for breach of contract or, in the alternative, unjust enrichment. Lastly, the evidence adduced at trial supported the damages the district court awarded. Therefore, we affirm.

AFFIRMED.