JEFFREY A. JOHNSON AND RONNI JOHNSON, APPELLEES, v. RUBY MAYS, APPELLANT.

346 N.W.2d 401

Filed March 30, 1984. No. 83-311.

Bump, Howland & Watson, for appellant.

Michael T. Varn, for appellees.

KRIVOSHA, C.J., CAPORALE, and GRANT, JJ., and CAMP, D.J., and COLWELL, D.J., Retired.

CAMP, D.J.

This is an action in equity brought in the district court for Sheridan County, Nebraska, by Jeffrey A. Johnson and Ronni Johnson, plaintiffs-appellees, hereinafter referred to as Johnsons, against Ruby Mays, individually, defendant-appellant, hereinafter referred to as Mays. The purpose of the action was to enjoin Mays from interfering with Johnsons' ingress and egress to their land. The trial court found that the driveway in question was a way of necessity. The court also found the existence of the driveway had been apparent to any casual observer since

the property was owned by a Kenneth Robbins.

Mays raises in her appeal three assignments of error. The first is that the trial court erred in not including all necessary parties. Her second assignment is that the ruling of the lower court results in the taking of property without due process or just compensation. And her final assignment is that the Johnsons failed to prove necessity, and failed to prove the location or extent of a way of necessity.

The record shows that the land involved is located in the south half of the northeast quarter of Section 34, Township 32 North, Range 44 West, of the 6th P.M., in Sheridan County, Nebraska, which was formerly subdivided as Block 43, Nelson's Addition to the City of Rushville, Nebraska. For purpose of clarity we will refer to the land in dispute by description of lots as formerly platted. The disputed land is Lots 11 and 12, owned by the Johnsons, and Lot 13 and the south 30 feet of Lot 14, owned by Mays, all in Block 43, Nelson's Addition. This land was originally subdivided on April 21, 1886, with an alleyway between two tiers of lots, and with Emmert Street on the west side of the lots and Seventh Street on the north side of the lots. Seventh Street connects with Main Street, which is located to the east side of the two tiers of lots. The record further shows that on January 23, 1904, a deed of vacation was filed, vacating the alleyway, Emmert Street, and Seventh Street. The alleyway is now the disputed driveway, Emmert Street is a fence, trees, and a field, and Seventh Street is a roadway connecting onto Main Street. The driveway in question has a sewerline running approximately through the middle of it, a gasline running on the west side, a telephone line over the top of the sewerline, and overhead powerlines and cable TV lines. There is a waterline crossing the driveway.

On October 24, 1972, Essie Case and Bessie A. Wolf acquired ownership of Lots 1, 2, the north 44 feet of Lot 3, the south half of Lot 6, and Lots 7, 8, 9, 10, 11,

12, 13, and 14 of Block 43, Nelson's Addition. Case and Wolf subsequently traded quitclaim deeds between themselves so that Case was the eventual owner of Block 43 except for the south 16 feet of Lot 3, Lots 4 and 5, and the north half of Lot 6, which were owned by a Sibyl Sager. The vacated alleyway to the south and east of Lot 11 is owned by Case and Sager and is used by Case for the placement of a trailer home. Case subsequently conveyed to the city of Rushville a piece of what used to be Seventh Street so as to provide a Roland Molitar access to and from his property to Main Street. Molitar lives on property just north of Mays. In August of 1974 Case sold Lots 11, 12, 13, and 14 to a Kenneth Robbins. Robbins placed a trailer home on Lots 11 and 12 and built a driveway about 10 to 15 feet wide over Lots 13 and 14 in order to get to Seventh Street and then on down to Main Street. In September of 1974 Robbins sold Lots 13 and 14 to Molitar, and had an agreement with Molitar that Robbins would have access across Molitar's property to Seventh Street. In August of 1977 Robbins then sold Lots 11 and 12 to a Lloy Freese, and Freese used the driveway for his ingress and egress. Molitar testified that he had an oral agreement with Freese for Freese to use the roadway across Molitar's land for ingress and egress. In November of 1979 Molitar sold the south 30 feet of Lot 14 and all of Lot 13 to Mays. At the time of the sale the parties had an oral agreement for Mays to cross Molitar's land for her ingress and egress. Freese continued to utilize the driveway across Mays' land and also across Molitar's land until September of 1980 when Freese sold Lots 11 and 12 to a Don Schwarting. During the time Schwarting owned the property, he did not live on the property, but kept old cars on the property. Schwarting sold Lots 11 and 12 to the Johnsons in June of 1982. Prior to the date of the sale, the Johnsons had moved a trailer onto Lots 11 and 12 and were living in the trailer, using the driveway for

their ingress and egress, which would have been across the property of Mays and across the property of Molitar. Prior to the date of the deed from Schwarting to the Johnsons, Mays had made several attempts to block the driveway from her property to Seventh Street so that the Johnsons would not be able to use it, but law enforcement officials had the barricades taken down. The Johnsons secured a deed to the property, and then started this action for a permanent injunction when Mays placed a fence down the middle of the driveway.

In this equity action it is our duty to try the issues de novo upon the record and reach an independent conclusion without being influenced by the findings of the trial court, except, where the credible evidence is in conflict, to give weight to the facts that the trial court saw the witnesses and observed their demeanor while testifying, that it inspected the premises, and that its examination constituted evidence tending to influence belief or unbelief of the matters at issue in the case. *Sturm v. Mau*, 209 Neb. 865, 312 N.W.2d 272 (1981).

Where a conveyance is made of realty separated from the highway by other realty of the grantor or surrounded by his realty or by his and that of a third person, there arises, by implication, in favor of the grantee, a way of necessity across the premises of the grantor to the highway. *Hansen v. Smikahl*, 173 Neb. 309, 113 N.W.2d 210 (1962).

"An easement of necessity does not arise from an express grant, but is an easement arising either by implied grant or reservation. Such implied easements ordinarily arise in cases where land owned by one entity is divided by sale of a portion and the beneficial use of one tract or the other depends on an easement for ingress or egress or other purpose." *Graves v. Gerber*, 208 Neb. 209, 215, 302 N.W.2d 717, 720 (1981).

In *Badura v. Lyons*, 147 Neb. 442, 450, 23 N.W.2d 678, 683 (1946), this court said: " 'A way of neces-

sity is an easement arising from an implied grant or implied reservation; it is the result of the application of the principle that whenever a party conveys property, he conveys whatever is necessary for the beneficial use of that property and retains whatever is necessary for the beneficial use of land he still possesses. A way of necessity usually arises where there is a conveyance of a part of a tract of land of such nature and extent that either the part conveyed or the part retained is entirely surrounded by the land from which it is severed or by this land and the land of strangers. It is a universally established principle that where a tract of land is conveyed which is separated from the highway by other lands of the grantor or surrounded by his lands or by his and those of third persons, there arises, by implication, in favor of the grantee, a way of necessity across the premises of the grantor to the highway. In other words, if one grants a piece of land in the midst of his own, he thereby impliedly grants a way to reach it.' "

"A way of necessity is dependent on unity of ownership of the dominant and servient estates, followed by a severance thereof. A way of necessity cannot be claimed over the land of a third person, and it cannot exist where neither the party claiming the way nor the owner of the land over which it is claimed, nor anyone under whom they or either of them claim, was ever seised of both tracts of land at the same time. Moreover, there must have been an absolute ownership of both tracts." 25 Am. Jur. 2d *Easements and Licenses* § 35 at 448-49 (1966). "Necessity does not of itself create a way of necessity, but it is said to furnish evidence of the intention of the parties that a right of way is to be conveyed or retained, thereby raising an implication of a grant or reservation." 25 Am. Jur. 2d, *supra* § 36 at 450.

Robbins held the unity of ownership of Lots 11, 12, 13, and 14. When he sold Lots 13 and 14, he reserved a right-of-way across Molitar's property for his

ingress and egress. This was a way of necessity retained for the beneficial use of land that he, Robbins, still possessed. There was no other way of ingress or egress for Lots 11 and 12. To the west was farmland; to the east and south, residential land. This way of necessity continued through subsequent conveyances of Lots 11 and 12 from Robbins to Freese to Schwarting and to the Johnsons. When Mays secured Lot 13 and the south 30 feet of Lot 14, she knew of the right-of-way over her land by Freese and Schwarting. The pictures introduced into evidence graphically display a driveway that the trial court found by an on-site inspection was apparent to any casual observer since the property was owned by Kenneth Robbins.

"A person who purchases land with knowledge or with actual, constructive, or implied notice that it is burdened with an easement in favor of other property ordinarily takes the estate subject to the easement." 25 Am. Jur. 2d, *supra* § 97 at 502. One who purchases land burdened with an open and visible easement is charged with notice of the same, and the estate he purchases is servient to the easement. *Arterburn v. Beard*, 86 Neb. 733, 126 N.W. 379 (1910); *De Conly v. Winter Creek Canal Company*, 110 Neb. 102, 193 N.W. 157 (1923).

The record establishes a way of necessity across Mays' land. The trial court directed Mays not to fence or obstruct Lots 13 and 14 any further than 142 feet east of their west lines. The trial court viewed the scene and observed the exact location of the driveway, and from the record herein we cannot say that the trial court erred in its location of the way of necessity.

Mays raises one other assignment, and that is the trial court erred in not including all necessary parties. Mays argues that Molitar, Case, a Greg Hunter, who owns the property to the west of the lots, and Sibyl Sager, who owns the lots to the east of those in the dispute, should all have been made par-

ties to this action. In addition, Mays argues that Lewis Veit, coowner of Lot 13 and the south 30 feet of Lot 14, had a vested interest in the litigation.

Neb. Rev. Stat. § 25-323 (Reissue 1979) provides that "[t]he court may determine any controversy between parties before it, when it can be done without prejudice to the rights of others, or by saving their rights; but when a determination of the controversy cannot be had without the presence of other parties, the court must order them to be brought in."

" 'Indispensable parties to a suit are those who not only have an interest in the subject matter of the controversy, but also have an interest of such a nature that a final decree cannot be made without affecting their interests, or leaving the controversy in such a condition that its final determination may be wholly inconsistent with equity and good conscience. . . .' " *Burke Lumber & Coal Co. v. Anderson*, 162 Neb. 551, 561, 76 N.W.2d 630, 638 (1962). The record shows that the only person interfering with the right-of-way was Mays. It was not necessary for the determination of the case to involve those who were not threatening or performing acts of obstruction to the use of the driveway by the Johnsons. We do not believe the trial court erred in not ordering in additional parties. The decision of the trial court is affirmed.

AFFIRMED.