MARTIN C. KOCH AND MARIE F. KOCH, HUSBAND AND WIFE, ET AL., APPELLEES, V. GERALD M. KOCH, INDIVIDUALLY AND AS TRUSTEE FOR STEPHEN GERALD KOCH AND KENNETH MARTIN KOCH, MINORS, APPELLANT.
MARTIN C. KOCH AND MARIE F. KOCH, HUSBAND AND WIFE, APPELLEES, V. GERALD M. KOCH AND CAROL KOCH, HUSBAND AND WIFE, APPELLANTS.
MARTIN C. KOCH AND MARIE F. KOCH, HUSBAND AND WIFE, ET AL., APPELLEES, V. GERALD M. KOCH AND CAROL KOCH, HUSBAND AND WIFE, ET AL., APPELLANTS, COUNTY OF DIXON, NEBRASKA, A POLITICAL SUBDIVISION, ET AL., APPELLEES.
411 N.W.2d 319

Filed August 21, 1987.   Nos. 85-769, 85-770, 85-771.

Robert G. Scoville of Ryan & Scoville Law Office, for appellants.

William Horneber of Horneber Law Offices, for appellees Martin C. and Marie F. Koch and George M. and Dorothy M. Koch.

KRIVOSHA, C.J., BOSLAUGH, WHITE, HASTINGS, CAPORALE, SHANAHAN, and GRANT, JJ.

KRIVOSHA, C.J.
The appellees Martin C. and Marie F. Koch are the parents of the appellant Gerald M. Koch and the grandparents of Stephen Gerald Koch and Kenneth Martin Koch, the minor children of Gerald M. and Carol Koch.
Originally, Martin and Marie Koch were the owners of two

parcels of real estate. The first parcel (hereafter Section 29) is described as:

The Southeast Quarter (SE$^1$/$_4$) and the North Half of the Northeast Quarter (N$^1$/$_2$ NE$^1$/$_4$) and the East Half of the Northwest Quarter except a tract of approximately 3$^1$/$_2$ acres, beginning at the Northwest corner of said East Half of the Northwest Quarter (E$^1$/$_2$ NW$^1$/$_4$), thence South 40 rods, thence East 14 rods, thence North 40 rods, thence West 14 rods to point of beginning, all in Section Twenty-nine (29), Township Thirty-one (31), North, Range Four (4), East of the 6th P.M., in Dixon County, Nebraska.

The South Half of the Northeast Quarter (S$^1$/$_2$ NE$^1$/$_4$) of Section Twenty-nine (29), Township Thirty-one (31), North, Range Four (4), East of the 6th P. M., containing 80 acres, more or less.

The second tract of land (hereafter Section 21) is described as:

The East Half of the Northeast Quarter (E$^1$/$_2$ of the NE$^1$/$_4$) of Section Twenty-one (21), Township Thirty-one (31) North, Range Four (4) East of the 6th P.M., Dixon County, Nebraska.

In June of 1975, Martin and Marie Koch drafted a real estate contract in which they agreed to convey all of the property in Section 29 to Gerald and Carol Koch for $79,200. The contract recited that $12,000 was received by Martin and Marie Koch at that time. It also provided that Gerald and Carol Koch would assume a mortgage of $7,500 and that, for 20 years, they would make annual payments to Martin and Marie Koch for the balance of $59,700 plus interest.

In May of 1979, Martin and Marie Koch drafted an agreement for warranty deed in which they agreed to convey all of the above-described property in Section 21 to Gerald Koch, as trustee for his minor children, Stephen and Kenneth Koch. The agreement recited that the consideration for the conveyance was $40,000. The agreement further recited that $6,000 was "received" by Martin and Marie Koch "as a gift from sellers to purchaser" and that the purchaser would, for 20 years thereafter, make annual payments to Martin and Marie

Koch for the balance of $34,000 plus interest.

For reasons which are not particularly clear, in August of 1983, Martin and Marie Koch executed a warranty deed covering a portion of Section 29 to Gerald Koch "in consideration of Gift (Love and Affection)." Specifically, they transferred the "South half (S$\frac{1}{2}$) of the Southeast Quarter (SE$\frac{1}{4}$) of Section Twenty-nine (29), Township Thirty-one (31) North, Range Four (4), East of the 6th P.M., Dixon County, Nebraska." This was property that had previously been conveyed in June of 1975.

Thereafter, a dispute developed between Martin and Marie Koch and their son and daughter-in-law, Gerald and Carol Koch, and as a result of that, three lawsuits were filed in the district court for Dixon County, Nebraska. It appears from the record that the interests of appellees George M. and Dorothy M. Koch are as lessees of certain of the property involved in this litigation.

Subsequently, the parties entered into a stipulation whereby it was agreed that the district court for Dixon County should enter a decree providing that the property in Section 29 was to be conveyed by warranty deed to Gerald and Carol Koch as joint tenants. At the same time, the decree was to stipulate that the property in Section 21 was to be conveyed back to Martin and Marie Koch and that Gerald Koch, individually and as trustee for Stephen and Kenneth Koch, was to execute a quitclaim deed conveying all of their interests to the property in Section 21 back to Martin and Marie Koch. Also, the stipulation provided that certain personal property consisting principally of machinery and grain was to be divided between Martin and Marie Koch and Gerald and Carol Koch, with Gerald and Carol Koch paying $16,000 for the property granted to them to Martin and Marie Koch. Farm debts were divided between the parties. When all was said and done, Gerald and Carol Koch were once again the owners of the property in Section 29, as joint tenants, and Martin and Marie Koch were the owners of the property in Section 21, as joint tenants. The minor children were left without any interest in any property.

Gerald and Carol Koch, individually, and Gerald Koch, as

trustee for Stephen and Kenneth Koch, then filed a motion to vacate the decree which the district court had entered pursuant to the stipulation of the parties, alleging that they had not agreed to the stipulation or authorized their attorneys to enter into the stipulation. Gerald Koch, as trustee for Stephen and Kenneth Koch, also filed a motion to vacate the decree and to appoint a guardian ad litem for the minors. In the motion he alleged that the minor children were necessary parties to the lawsuit, had not been joined, and had not had a guardian ad litem appointed for them. The district court overruled these motions, and appeal was then taken to this court.

A number of assignments are raised. We may, however, dispose of these matters by simply addressing a single question with regard to each section of land. With regard to Section 29, the question is whether the district court erred in failing to sustain the appellants' motions to vacate the decree entered pursuant to the stipulation. With regard to Section 21, the question is whether the district court erred in failing to sustain the motions to vacate the decree because the minor children had not been made parties to the action and had not had a guardian ad litem appointed for them. We believe that the first question must be answered in the negative and the second in the affirmative, thereby requiring us to in part affirm and in part reverse and remand.

We turn first, then, to the issue involving Section 29. From the evidence it is clear that the minor children had no interest in this property. The only question, therefore, is whether the stipulation was entered into with the knowledge and consent of the appellants Gerald and Carol Koch. In answering that question we note that in *III Lounge, Inc. v. Gaines*, 217 Neb. 466, 471, 348 N.W.2d 903, 907 (1984), we said: "[I]t is the rule that, ordinarily, the power of the attorney to act for his client in an action is to be considered valid and sufficient until disproved, not void and insufficient until proved." For that reason, therefore, the burden was upon the appellants to establish that their attorneys were without authority when they acted. We do not believe that the appellants have met their burden.

To begin with, the record discloses that the appellants Gerald

and Carol Koch were present in the courtroom when their attorneys submitted the stipulation to the district court. Certainly, it is clear that they were aware the stipulation was being offered. Furthermore, the record discloses that at the hearing on the motions to vacate the appellant Gerald Koch was questioned regarding the stipulation and answered as follows:

Q. Mr. Koch, during the negotiations preceding the entry of this stipulation on April 30, 1985, did you discuss with your attorneys, Mr. Fitch and Mr. Behm the real estate terms of that Stipulation?

A. Yes, we did.

. . . .

Q. Would you tell the Court the substance of what you asked and when you asked it?

A. Well, it was one of them long nights about 12 o'clock at night. He said we had to give away the kids' land. We kept asking the question, "Do we have the right?" That is no problem. Sign some papers and that will be all over with.

The appellants' former attorney, Donald Fitch, also testified at the hearing:

Q. Prior to the entry of the Court's Order on April 30, 1985, approving the parties' stipulation in the three cases in question—which I believe the Court has been asked to take judicial notice of—as counsel, did you discuss the terms with your clients?

A. Yes.

Q. With all your clients?

A. Yes.

Q. With Gerald individually and as a trustee for the minor children?

A. Gerald and Carol Koch were present at all the discussions together.

. . . .

Q. Did you discuss the conveyance of real estate—strike that. Was the conveyance of the real estate and terms of this stipulation entered on 4-30-85 discussed with your clients?

A. The trust property?

310

Q. No, the conveyance. The real estate terms in general of that stipulation, were they discussed with your clients?

A. Yes.

. . . .

Q. Was the conveyance of the real estate agreed to by all your clients?

A. Yes.

. . . .

Q. Did these real estate terms of the stipulation . . . was this discussed with the Defendant-Trustee?

A. Yes, on several occasions.

. . . .

Q. Mr. Fitch, did you discuss with the Defendant-Trustee the probability of the Court's setting aside this agreement for warranty deed on this trust property?

A. Yes, we discussed several options in connection with the trust property.

Q. Did you explain the effect of such an order? That is an order setting aside the order for warranty deed?

A. Yes.

. . . .

Q. At the time of entry into the stipulation on 4-30-85 was the Defendant-Trustee in agreement with the disposition of the real estate; including the trust property on April 30, 1985?

A. In agreement, subject to some concern about how it could be done or whether it could be done.

. . . .

Q. . . . Once again getting back to the stipulation, was the ownership distribution and/or delivery of personal property, including farm machinery, set out in the stipulation?

A. Yes.

Q. And it was agreed by your clients?

A. I thought it was.

. . . .

Q. . . . Were items 1 through 15 on pages 2 and 3 specifically discussed with your clients?

A. If I'm not mistaken, all of these 15 items were

discussed . . . .

Q. It was understood and agreed to by your clients?

A. As far as I knew they were.

. . . .

Q. And [was the purchase price of $16,000] agreed to by your clients?

A. I was under the impression they were.

Q. Were you authorized to enter into the stipulation on their behalf?

A. Yes.

. . . .

Q. Were you authorized to enter into this stipulation with [the release of the bill of sale] in there?

A. I believed that I was, yes.

. . . .

Q. The division of the existing hay inventory, was this discussed with your clients?

A. Yes.

Q. Was that agreed to?

A. Yes.

Q. Were you authorized to so stipulate?

A. Yes, I thought I was.

. . . .

Q. And were you authorized to settle all three cases for all Defendants or Respondents in this matter?

A. Yes.

Q. Following the discussion with your clients of these specific terms of the stipulation, did your clients agree to accept those terms following your discussion?

. . . .

A. Yes.

Q. Were your clients advised of the specific terms of the stipulation prior to it being presented to the Court as Exhibit 1 and added into evidence?

A. Yes.

Thus, it seems clear beyond question that the weight of the evidence supports the contention that the appellants had authorized and consented that their attorneys enter into the stipulation. At least, absent any evidence to the contrary, it

cannot be said that the appellants have met their burden in this regard. For that reason, it appears to us that the stipulation and subsequent decree as they affect Section 29 must be affirmed.

The situation with regard to Section 21 is an entirely different matter. In *Johnson v. Mays*, 216 Neb. 890, 897, 346 N.W.2d 401, 405-06 (1984), we said:

> " 'Indispensable parties to a suit are those who not only have an interest in the subject matter of the controversy, but also have an interest of such a nature that a final decree cannot be made without affecting their interests, or leaving the controversy in such a condition that its final determination may be wholly inconsistent with equity and good conscience. . . .' "

See, also, *Klitzing v. Didier*, 215 Neb. 122, 337 N.W.2d 418 (1983); *James J. Parks Co. v. Lakin*, 206 Neb. 184, 292 N.W.2d 21 (1980); *Shepoka v. Knopik*, 197 Neb. 651, 250 N.W.2d 619 (1977).

Further, in *Workman v. Workman*, 167 Neb. 857, 95 N.W.2d 186 (1959), this court found that the minor beneficiaries to a trust were indispensable parties to an action involving the trust. In so holding, we said at 869-70, 95 N.W.2d at 194:

> The beneficiaries of the arrangement made by Workman and Mrs. Workman as pleaded in the third amended and supplemental petition are their children, three of whom are minors. It follows they are necessary parties to the litigation as a condition of a full and final determination of the controversy alleged in this case. This is especially true if, as appellees contend, Mrs. Workman does not have capacity to be a proper plaintiff in the case, which it is not now necessary to determine. The Code of Civil Procedure declares if a determination of the controversy cannot be had without the presence of other parties, the court must order them to be brought into the litigation. § 25-323, R. R. S. 1943. Smith v. Shaffer, 29 Neb. 656, 45 N.W. 936, declares: "When it appears that all the parties necessary to a proper and complete determination of an equity cause were not before the district court, the supreme court may remand the cause for the purpose of having such parties brought in." See,

also, Cunningham v. Brewer, on rehearing, 144 Neb. 218, 16 N.W.2d 533; Burke Lumber & Coal Co. v. Anderson, 162 Neb. 551, 76 N.W.2d 630.

Furthermore, Neb. Rev. Stat. § 25-323 (Reissue 1985) provides:

> The court may determine any controversy between parties before it, when it can be done without prejudice to the rights of others, or by saving their rights; but when a determination of the controversy cannot be had without the presence of other parties, the court must order them to be brought in.

One may argue that the minor children were present by reason of the fact that Gerald Koch sued both individually and as trustee for the minor children. In fact, the appellees argue that under the provisions of Neb. Rev. Stat. § 30-2222 (Reissue 1985) of the Nebraska Probate Code, the presence of Gerald Koch as trustee for the minor children was sufficient. Without attempting to analyze the full ramifications of that section, we believe that the language of the section, as relevant to this action, discloses on its face that the children were without representation. Section 30-2222(2)(ii) provides as follows: "To the extent there is *no conflict of interest* between them or among persons represented . . . orders binding a trustee bind beneficiaries of the trust . . . . If there is *no conflict of interest* and no conservator or guardian has been appointed, a parent may represent his minor child." (Emphasis supplied.)

The simple answer to this issue is that, at least on its face, there appears to be a clear conflict of interest. The property involved in Section 21 was owned by the minor children. When the settlement was finally effected, the trustee parent was an owner of Section 29, the grantor grandparents were the owners of Section 21, and the minor children were left without any interest in any property. It is difficult to imagine how that situation does not, at least on its face, establish a conflict of interest. For that reason, we believe that the minor children were necessary parties to the disposition of their interests in Section 21, though their father's interest has been disposed of. We therefore believe that the decree, insofar as it terminated the interests of the minor children in Section 21, was erroneous,

and that portion of the cause must be reversed and remanded with directions to make the minor children parties to the action, appoint a disinterested guardian ad litem for them, and litigate the issue of the interests of the minor children in Section 21. The decision of the district court is affirmed insofar as it affects Section 29 and the interest of Gerald Koch in Section 21, and reversed and remanded for new trial insofar as the interests of the two minor children in Section 21 are concerned.

AFFIRMED IN PART, AND IN PART REVERSED AND REMANDED FOR A NEW TRIAL.