Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
11/23/2018 12:11 AM CST

Samuel Pan, doing business as US World
Daycare Center, appellee, v. IOC Realty
Specialist Inc. and Bernard M.
Tompkins, appellants.

___ N.W.2d ___

Filed October 12, 2018.    No. S-17-815.

1. **Statutes: Judgments: Appeal and Error.** Issues of statutory interpretation present a question of law, and when reviewing questions of law, an appellate court has an obligation to resolve the questions independently of the conclusion reached by the trial court.
2. **Judgments: Appeal and Error.** In reviewing a judgment awarded in a bench trial of a law action, an appellate court does not reweigh evidence, but considers the evidence in the light most favorable to the successful party and resolves evidentiary conflicts in favor of the successful party, who is entitled to every reasonable inference deducible from the evidence.
3. **Intent: Words and Phrases.** The word "include" preceding a list does not indicate an exclusive list absent other language showing a contrary intent.
4. **Landlord and Tenant: Leases: Property: Statutes.** The scope of the Disposition of Personal Property Landlord and Tenant Act is not so narrowly confined as to exclude commercial leases. As such, the act applies in commercial lease cases.
5. **Landlord and Tenant: Property: Proof: Liability.** All that is required under the Disposition of Personal Property Landlord and Tenant Act is evidence that would lead a prudent person to believe the property belonged to the requesting party. The landlord need not know for certain that the party requesting the personal property owns it in order to be relieved from liability.
6. **Actions: Parties.** In order for a party to be indispensable or necessary, the threshold determination that must be made is whether the party has an interest in the subject matter of the controversy.

7. **Landlord and Tenant: Property: Conversion.** The remedial provisions within the Disposition of Personal Property Landlord and Tenant Act are rooted in the theories of conversion by seeking to restore the status quo when a landlord improperly disposes of or withholds the property of a former tenant.

8. **Landlord and Tenant: Property: Damages: Words and Phrases.** The phrase "value of the personal property" in its relation to "actual damages" is the fair market value of the property at the time the tenant's property is improperly detained by the landlord.

9. **Judgments: Appeal and Error.** In reviewing a judgment awarded in a bench trial of a law action, an appellate court does not reweigh evidence, but considers the evidence in the light most favorable to the successful party and resolves evidentiary conflicts in favor of the successful party, who is entitled to every reasonable inference deducible from the evidence.

10. **Attorney Fees: Appeal and Error.** When an attorney fee is authorized, the amount of the fee is addressed to the trial court's discretion, and its ruling will not be disturbed on appeal absent an abuse of discretion.

11. **Attorney Fees: Records.** An award of attorney fees involves consideration of such factors as the nature of the case, the services performed and results obtained, the length of time required for preparation and presentation of the case, the customary charges of the bar, and general equities of the case. If the contents of the record show the allowed fee not to be unreasonable, then that fee would not be untenable or an abuse of discretion.

Appeal from the District Court for Douglas County: GREGORY M. SCHATZ, Judge. Affirmed.

John C. Chatelain, of Chatelain & Maynard, for appellants.

Willow T. Head, of Law Offices of Willow T. Head, P.C., L.L.O., for appellee.

HEAVICAN, C.J., MILLER-LERMAN, CASSEL, STACY, FUNKE, PAPIK, and FREUDENBERG, JJ.

FREUDENBERG, J.

## I. SUMMARY OF CASE

This case involves a dispute between a landlord and a tenant over the disposition of personal property. A former tenant, Samuel Pan, sued his landlord, IOC Realty Specialist Inc., and

its sole shareholder, Bernard M. Tompkins, when the landlord refused to return the tenant's personal property that remained on the leased premises. After a bench trial, a judgment was entered against IOC Realty Specialist and Tompkins for the wrongful retention of property pursuant to the Disposition of Personal Property Landlord and Tenant Act (the Act).[1] The district court held that IOC Realty Specialist and Tompkins violated the Act by knowingly retaining personal property that belonged to Pan and awarded Pan damages and attorney fees. We affirm.

## II. FACTS

IOC Realty Specialist is a corporation that deals in real estate and property management. IOC Realty Specialist is owned by its sole shareholder and licensed real estate broker, Tompkins (collectively IOC). For approximately 20 years, Tompkins, by and through IOC Realty Specialist, has managed the leased premises at issue in Omaha, Nebraska, for its owners, Leon and Mary Kleinschmit. The Kleinschmits or their corporation, Millard Electronics, Inc., were consistently listed as the "lessor" on each lease signed concerning the subject property.

In 2007, Pan purchased a daycare business which included an assignment of a lease at a commercial property owned by the Kleinschmits. IOC facilitated this assignment as the Kleinschmits' real estate broker. The leasehold was assigned in October 2007, designating Pan and his business partner, Mary Chol, as the new tenants on the assignment agreement and lease documentation. In 2007, Chol left the business arrangement with Pan. However, Pan's daycare business continued to lease the property on a month-to-month basis until June 2014.

In June 2014, Pan negotiated with Ci Nuer Ben America (CNBA), a Nebraska corporation, for the purchase of Pan's

[1] Neb. Rev. Stat. §§ 69-2301 to 69-2314 (Reissue 2009 & Cum. Supp. 2016).

daycare business and all of Pan's personal property on the leased premises. The personal property included various children's toys, sleeping mats, appliances, a wooden fence, a storage shed, and outside playsets embedded in concrete at the back of the building. Pan advised IOC of his agreement with CNBA for the purchase of Pan's daycare business, including all of his personal property on the leased premises. IOC met with the owner of CNBA, James Panoam, in July and signed a new lease to begin CNBA's tenancy of the property on August 1.

Soon thereafter, CNBA paid rent for the month of August, but failed to make any further rent payments. Additionally, Pan never received any payment from CNBA under the terms of their agreement and, as a consequence, Pan never delivered the keys to the lease premises to CNBA.

Pan advised IOC in August 2014 that CNBA never paid the contract price for the personal property on the leased premises. Pan repeatedly attempted to recover his property through December. Pan called IOC and visited the leased property in an effort to retrieve the personal property at issue, but found that the locks had been changed.

Pan and IOC spoke both over the telephone and in person regarding the disposition of the property. At one point, IOC allowed Pan to access the leased property to recover some of his belongings. However, IOC did not allow Pan to retrieve the remainder of his property after further requests from Pan to do so.

After 3 consecutive months (September through November 2014) of nonpayment of rent, IOC evicted CNBA and sought a new lessee. In an effort to mitigate damages and relet the building, IOC had several personal property items subject to the agreement between Pan and CNBA moved to a warehouse that IOC managed for Millard Electronics.

Pan retained an attorney who sent a letter to IOC requesting that Pan's property be returned. IOC stated it was concerned about future property disputes between Pan and CNBA. Therefore, IOC requested that Pan provide a statement from

CNBA waiving its claim to the property. On December 26, 2014, Pan provided IOC an affidavit from Panoam, identifying himself as president of CNBA, and indicating that Pan owned the property. IOC refused to return the property and requested a notarized corporate resolution, reasoning that the initial affidavit was insufficient to bind CNBA. On January 12, 2015, Pan provided a second statement from Panoam as "President and Sole Shareholder d/b/a [CNBA]" containing a list of personal property and stating that CNBA did not have any ownership in the personal property on the leased premises. However, IOC again refused to return the personal property, because it did not receive a corporate resolution as requested.

In January 2015, IOC entered into a new lease with another company to operate a daycare. Some of the disputed property was considered by IOC too large to remove and remained on the leased premises. IOC permitted the new daycare to utilize the property.

IOC did not request storage fees from Pan during any of their business discussions regarding the property. IOC first requested storage fees when it filed a counterclaim for such payment in its answer to Pan's complaint.

In June 2015, IOC mailed correspondence to Pan stating a willingness to release the subject personal property if Pan would provide a "'Transfer or Assignment and Indemnification,'" requesting that Pan indemnify IOC from claims by CNBA. Pan refused to agree to indemnify IOC and subsequently filed suit for recovery of the property, damages for IOC's retention of the property, and attorney fees. IOC denied that Pan was entitled to the property and filed a counterclaim for storage fees incurred.

### 1. Exhibits 17 and 32 and Reasonable Belief of Ownership

During trial, two affidavits were admitted into evidence over hearsay objections. The first, exhibit 17, was a letter authored by Pan's attorney which included one of the

above-mentioned affidavits from Panoam doing business as CNBA. The affidavit asserted that the property did not belong to CNBA, but, rather, it belonged to Pan. The court admitted the exhibit, reasoning that the exhibit was being offered as a showing by Pan that he complied with IOC's demand for a statement from CNBA disavowing its ownership in the subject personal property.

In a similar fashion, Pan offered exhibit 32, the second affidavit by Panoam stating that the personal property located at the subject leased premises did not belong to CNBA. The court again overruled the hearsay objection, finding Pan was not offering the exhibit for the truth of its contents. Further, the district court detailed that exhibit 32 would be utilized only to show that Pan complied with the requests made by IOC as opposed to proving that the property was owned by Pan.

## 2. Evidence of Damages and Fair Market Value

At trial, Pan opined on the value of the disputed personal property. Pan, although lacking several itemized and specific receipts of his expenditures on the subject personal property, asserted that the property was worth $27,611, according to an itemization in exhibit 14. In addition, Pan testified as to the accuracy of bank statements and copies of checks stemming from two accounts used in the operation of his daycare business. Pan also testified that these statements and checks corresponded to the property at issue. Generally, these bank statements and checks identify to whom funds were paid, but do not enumerate the specific purchases being made.

Contesting Pan's asserted valuation of the personal property, IOC presented testimony that the property was bug infested, dirty, and in poor condition following CNBA's eviction in November 2014. IOC did not present evidence as to a specific monetary value of the personal property. No expert

evidence was presented by either party regarding the fair market value of the property at issue.

### 3. District Court's Final Order

After the trial, the district court found that the Act applied. The court reasoned that by utilizing the phrase "*whether such premises are used as a dwelling unit or self-storage unit or facility or not*" in the definition of "tenant," the Act did not preclude commercial tenants from citing the Act in attempting to retrieve their personal property from landlords.

The district court found each defendant to be jointly and severally liable, because neither IOC Realty Specialist nor Tompkins made any distinction between themselves in the pleadings. Further, the court found IOC held itself out to be the owner, landlord, and lessor of the property in question and never took the position that it was simply an agent for the true owners of the property in any pleadings filed in the case. The court also noted that IOC's counterclaim for storage fees corroborated this finding.

Based on the evidence received at trial, the district court found that IOC retained Pan's property in violation of the Act. By finding that IOC withheld Pan's property from him while knowing that Pan's sale of the property had not been completed in August 2014, the court implicitly found IOC's asserted belief that the property belonged to CNBA was unreasonable.

The court relied on exhibit 14, as well as the testimony regarding the condition of the property, in order to determine damages in the case. Pan was awarded $10,000, or approximately 50 percent of Pan's personal valuation, in damages. The court notably excluded the storage shed and fence, finding that these items were permanently affixed to the real property and no longer personal property.

Also pursuant to the Act, the district court awarded Pan attorney fees. IOC's counterclaim for storage fees was dismissed. From this order, IOC appeals.

## III. ASSIGNMENTS OF ERROR

IOC assigns that the district court erred in (1) failing to join necessary and indispensable parties, (2) admitting hearsay into evidence, (3) finding that Pan had ownership and a right to possession of the subject party, (4) entering a money judgment in a replevin action without determining that the property could not be returned, (5) determining the fair market value of the property at issue without sufficient evidence, (6) finding the Act applicable to a commercial lease, (7) finding that IOC violated the Act, and (8) denying IOC's claim for storage fees.

## IV. STANDARD OF REVIEW

[1] Issues of statutory interpretation present a question of law, and when reviewing questions of law, an appellate court has an obligation to resolve the questions independently of the conclusion reached by the trial court.[2]

The amount of damages to be awarded is a determination solely for the fact finder, and its action in this respect will not be disturbed on appeal if it is supported by evidence and bears a reasonable relationship to the elements of the damages proved.[3] With respect to damages, an appellate court reviews the trial court's factual findings under a clearly erroneous standard of review.[4]

[2] In a bench trial of a law action, the trial court's factual findings have the effect of a jury verdict, and the Supreme Court will not disturb those findings unless they are clearly erroneous.[5] In reviewing a judgment awarded in a bench trial of a law action, an appellate court does not reweigh evidence,

---

[2] See *Whipps Land & Cattle Co. v. Level 3 Communications*, 265 Neb. 472, 658 N.W.2d 258 (2003).

[3] *Funk v. Lincoln-Lancaster Cty. Crime Stoppers*, 294 Neb. 715, 885 N.W.2d 1 (2016).

[4] *Id.*

[5] *Mays v. Midnite Dreams*, 300 Neb. 485, 915 N.W.2d 71 (2018).

but considers the evidence in the light most favorable to the successful party and resolves evidentiary conflicts in favor of the successful party, who is entitled to every reasonable inference deducible from the evidence.[6]

When an attorney fee is authorized, the amount of the fee is addressed to the trial court's discretion, and its ruling will not be disturbed on appeal absent an abuse of discretion.[7]

## V. ANALYSIS

### 1. The Act or Replevin

Before addressing the parties' assignments of error, it is necessary to clarify the nature of the action tried to the court. Pan's complaint styled his action as one for replevin, but both parties address issues of the Act on appeal and tried the action largely as one seeking damages under the Act. Generally, the measure of damages under the Act are (1) money damages not exceeding fair market value of the personal property and (2) attorney fees,[8] while the object of a replevin action is to recover specific personal property.[9]

The parties tried the case as one seeking primarily monetary damages. On appeal, IOC does not assign error to the district court's order for an unpled remedy. Thus, while it would have been preferable for Pan to move to conform the pleadings to the evidence, Pan's failure to formally seek amendment is not dispositive.[10]

Neb. Ct. R. Pldg. § 6-1115(b) provides in pertinent part:

When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the

---

[6] *Id.*

[7] *ACI Worldwide Corp. v. Baldwin Hackett & Meeks*, 296 Neb. 818, 896 N.W.2d 156 (2017).

[8] § 69-2312.

[9] *Zelenka v. Pratte*, 300 Neb. 100, 912 N.W.2d 723 (2018).

[10] See *id.*

pleadings. Such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time, even after judgment; but failure so to amend does not affect the result of the trial of these issues.[11]

Here, despite styling the complaint as one for replevin, the parties tried the action as one for damages under the Act and treated the case in all respects as if the Act had been raised in the pleadings. We conclude the parties impliedly consented to try this action as one for remedy under the Act and, pursuant to § 6-1115(b), treat this action as one in which the Act was raised in the pleadings.

## 2. The Act Applies to
### Commercial Leases

This is the court's first opportunity to address the Act, which provides procedures that landlords are to follow when a former tenant abandons personal property.[12] It also provides remedies to tenants in the event they seek the return of property and the landlord improperly refuses.[13]

The fundamental objective of statutory interpretation is to ascertain and carry out the Legislature's intent.[14] When statutory interpretation is one of first impression, the statutory language is to be given its plain and ordinary meaning, and an appellate court will not resort to interpretation to ascertain the meaning of statutory words which are plain, direct, and unambiguous.[15] The court, in discerning the meaning of a statute, should determine and give effect to the purpose and intent of the Legislature as ascertained from the entire

---

[11] See *Zelenka v. Pratte, supra* note 9 (citing *Blinn v. Beatrice Community Hosp. & Health Ctr.*, 270 Neb. 809, 708 N.W.2d 235 (2006)).

[12] See §§ 69-2303 through § 69-2307.

[13] See § 69-2312.

[14] *State v. Thompson*, 294 Neb. 197, 881 N.W.2d 609 (2016).

[15] *Dean v. State*, 288 Neb. 530, 849 N.W.2d 138 (2014).

language of the statute considered in its plain, ordinary, and popular sense.[16]

In construing statutes, legislative intention is to be determined from a general consideration of a whole act with reference to the subject matter to which it applies and the particular topic under which the language in question is found, and intent so deduced from the whole will prevail over that of a particular part considered separately.[17] When words of a particular clause, taken literally, would plainly contradict other clauses of the same statute, or lead to some manifest absurdity or to some consequences which a court sees plainly could not have been intended, or to result manifestly against the general term, scope, and purpose of the law, then the court may apply the rules of construction to ascertain the meaning and intent of the lawgiver, and bring the whole statute into harmony if possible.[18]

IOC argues on appeal that the Act does not apply to commercial leases. Rather, IOC contends that by specifically identifying the terms "'dwelling unit'" and "'self-storage unit'" in certain sections of the Act, the Legislature intended for the statute to be read narrowly.[19] Further, IOC argues that the district court erred in construing § 69-2302(6) by reading a meaning into it that was not plainly there. We disagree.

IOC relies on the language of § 69-2302(1) and (6), defining landlord and tenant respectively, in making its argument. Section 69-2302(1), defining landlord, states, "Landlord [is defined as] the owner, lessor, or sublessor of . . . premises, *including self-service storage units or facilities*, for rent or his or her agent or successor in interest." (Emphasis supplied.) Section 69-2302(6) defines "[t]enant" to mean "a person entitled under a rental agreement to occupy any premises for rent

---

[16] *Farmers Co-op v. State*, 296 Neb. 347, 893 N.W.2d 728 (2017).

[17] *Lang v. Sanitary District*, 160 Neb. 754, 71 N.W.2d 608 (1955).

[18] *Dean v. State*, *supra* note 15.

[19] Brief for appellants at 37.

or storage uses to the exclusion of others *whether such premises are used as a dwelling unit or self-service storage unit or facility or not*." (Emphasis supplied.)

[3] This court has held that the word "include" preceding a list does not indicate an exclusive list absent other language showing a contrary intent.[20] Thus, the identification of "storage units or facilities" within definition of "landlord" under § 69-2302(1) does not itself indicate a limitation of the Act to self-storage units and dwellings. Rather, the inclusion of these two types of facilities would indicate a nonexclusive list of example applications. Therefore, the Legislature's specific identification of storage units and facilities in this section would not create such a limiting effect as to indicate that the Act applies only to leases of that nature.

Regarding the definition of "tenant," the phrase "whether or not," as found in the definition of "tenant" under § 69-2302(6), is plainly defined to indicate that it is not important which of the possibilities are true.[21] In addition, a reading of subsection (6) of § 69-2302, when considering the rest of the statute, specifically in conjunction with the definition of "landlord" at subsection (1), would not produce such a narrowed scope as IOC suggests. Rather, a plain reading of this definitional section would indicate that the use of the premises or nature of the lease would not have an effect on its applicability.[22] Moreover, the definition of "tenant" also broadly includes the language "any premises for rent or storage."[23]

[4] We find that the scope of the Act is not so narrowly confined as to exclude commercial leases. As such, the Act applies in commercial lease cases.

---

[20] *Timberlake v. Douglas County*, 291 Neb. 387, 865 N.W.2d 788 (2015).

[21] See "Whether or not," Cambridge Dictionary, https://dictionary.cambridge.org/dictionary/english (last visited Sept. 24, 2018).

[22] See § 69-2302(1) and (6).

[23] § 69-2302(6).

### 3. VIOLATION OF THE ACT

The district court found that, in violation of the Act, IOC, as the landlord of the leased premises, wrongfully retained Pan's personal property by failing to return it to Pan upon his request. IOC argues on appeal that (1) IOC was not the "landlord" under § 69-2302(1), (2) Pan was not the "former tenant" under § 69-2307(1), and (3) § 69-2302(4) of the Act requires a "[r]easonable belief" that the personal property belonged to the requesting party before the landlord is required to return the property to that party. Lastly, IOC argues that the Act requires the payment of storage fees to IOC.

Under § 69-2307(1):

> A landlord shall release personal property left on the vacated premises to the former tenant or to any person reasonably believed by the landlord to be the owner if such tenant or other person pays the reasonable costs of storage and advertising and takes possession of the property not later than the date specified in the notice for taking possession.

The purpose of § 69-2307(1) is to protect landlords from liability to owners of personal property when the landlord erroneously surrenders property to a party other than the true owner but who the landlord reasonably believed was the owner. Conversely, if the requesting party is not a former tenant or a person that the landlord reasonably believes owns the personal property, the landlord would not be protected from liability under § 69-2307(1).

Under § 69-2312, the Act plainly envisions a cause of action by a tenant for landlord violations of its provisions. Reading §§ 69-2307 and 69-2312 in conjunction, a landlord would not be required to relinquish property to any party that is either (1) not a former tenant or (2) not a person who is reasonably believed by the landlord to be the owner of the personal property at issue. But a landlord would be required to release the property to a former tenant or a person claiming ownership of the personal property, so long as the landlord, under an

objective, prudent person standard, should reasonably believe the requesting party is the owner of the personal property in his possession *and* that person pays reasonable storage fees to the extent required to be paid by the Act.

### (a) Landlord

Addressing IOC's first contention that it is not the landlord under the Act, the definition of a landlord under § 69-2302(1) explicitly provides that the landlord is the "owner, lessor, or sublessor . . . or his or her agent or successor in interest." This definition clearly includes agents under its scope. Tompkins admitted in his testimony at trial that he, as well as his company, IOC Realty Specialist, served as the Kleinschmits' agent for the lease of the property for years. Consequently, IOC is considered the landlord of the property for the purposes of applying this section of the Act.

### (b) Former Tenant

IOC contends that CNBA, and not Pan, was the "former tenant" for the purposes of applying § 69-2307(1) of the Act. The definition of tenant under the Act, in pertinent part, broadly defines tenant to include "person[s] entitled under a rental agreement to occupy any premises for rent or storage uses to the exclusion of others."[24] Pan falls under this definition, because he rented the leased premises and operated his daycare business on the property for several years.

But § 69-2307(1) specifies that the landlord shall release personal property to the *former* tenant. Giving the word "former" its plain and ordinary meaning, as Nebraska law requires, "former" is defined as having been previously or "coming before in time."[25] There is no reason to narrowly construe the term "former tenant" in § 69-2307(1), as IOC suggests. Rather, "former tenant" includes any past tenant to whom the property

---

[24] § 69-2302(6).

[25] Merriam Webster's Collegiate Dictionary 459 (10th ed. 2001).

may have belonged. Under such an analysis, the district court did not err in finding that Pan was a former tenant under the Act and that IOC was required to release the personal property to Pan.

### (c) Reasonable Belief That Pan Was Owner of Property

IOC also asserts that it lacked a reasonable belief that Pan was the owner of the property. IOC could be relieved of liability if it did not have a reasonable belief that Pan was the true owner of the personal property.[26]

The Act defines reasonable belief at § 69-2302(4):

> Reasonable belief shall mean the knowledge or belief a prudent person should have without making an investigation, including any investigation of public records, except that when the landlord has specific information indicating that such an investigation would more probably than not reveal pertinent information and the cost of such an investigation would be reasonable in relation to the probable value of the personal property involved, reasonable belief shall include the actual knowledge or belief a prudent person would have if such investigation were made.

Under this definition, IOC's imputed reasonable belief would include the actual knowledge or belief that "a prudent person" would have if an investigation were made. It is an objective rather than a subjective standard.

Although Pan did initially inform Tompkins that Pan entered into an agreement with CNBA to sell his personal property, Tompkins was subsequently told on a number of occasions that Pan was the owner of this property. Pan sent numerous letters to Tompkins, including various affidavits and statements from CNBA stating that CNBA had no ownership right to the property. Tompkins admitted in his testimony

---

[26] See § 69-2307(1).

at trial and in response letters to Pan's attorney submitted as evidence at trial that he had received Pan's letters and CNBA's statements.

[5] All that is required under the Act is evidence that would lead a prudent person to believe the property belonged to the requesting party. The landlord need not know for certain that the party requesting the personal property owns it in order to be relieved from liability. IOC demanded more than what is required under the Act. IOC specifically requested a notarized affidavit and corporate resolution before it would agree to return Pan's personal property. Although Pan sent multiple affidavits stating that CNBA disclaimed ownership in the property, IOC continued to refuse to return the property.

The district court implicitly found IOC's belief the property belonged to CNBA to be unreasonable by determining that IOC withheld Pan's personal property while knowing that Pan's purchase agreement had not been completed in August 2014. In making this determination, the district court relied on correspondence between Pan and Tompkins in the aggregate. In the parties' correspondence, Tompkins specifically conditioned the return of the property upon his receipt of written statements from CNBA disclaiming its ownership interest in the personal property at issue. The district court additionally stated that it relied on testimony disclosing the fact that Tompkins spoke to Pan regarding the failed sale of his business to CNBA in making its determination of property ownership.

IOC argues on appeal that the district court improperly relied upon inadmissible hearsay when it received into evidence certain attachments to the correspondence between Pan and Tompkins, specifically, exhibits 17 and 32, which were identified as affidavits from CNBA stating that it disclaimed any ownership in the personal property. We find no merit to IOC's argument that the court improperly relied on hearsay in reaching its conclusion.

Hearsay is a statement offered in evidence to prove the truth of the matter asserted.[27] If an out-of-court statement is not offered for proving the truth of the facts asserted, it is not hearsay.[28] The district court admitted exhibits 17 and 32 for the purpose of proving that Pan complied with IOC's requests for proof that CNBA did not claim an ownership interest in the property. Regardless of the truth of the matter asserted in those exhibits, they form part of the surrounding circumstances that would lead a prudent person to believe that Pan was the owner of the personal property at issue.

The court also relied on testimony disclosing the fact that Tompkins spoke to Pan regarding the failed sale of his business to CNBA. Consequently, the district court found that IOC was aware that the property belonged to Pan as a result of the failed sale. Other relevant and properly admitted evidence included testimony from both Pan and Tompkins indicating that IOC at one point allowed Pan onto the premises to take some of the personal property, as well as an admission within IOC's counterclaim stating Pan *owns* or claims ownership in the property.

The district court did not clearly err in finding that Pan was the owner of the personal property and, further, in its implicit finding that IOC's belief the property belonged to CNBA was unreasonable. As such, the court did not clearly err when it held that IOC violated the Act by refusing to return Pan's property upon his request.

### (d) Storage Fees

IOC argues that it did not violate the Act, because § 69-2312 requires the payment of reasonable storage fees when a landlord retains the personal property of a tenant. While this may be true, pursuant to § 69-2311(3), a demand for storage fees by a landlord must be in writing and mailed to the tenant

---

[27] Neb. Rev. Stat. § 27-801(3) (Reissue 2016).

[28] *State v. McCave*, 282 Neb. 500, 805 N.W.2d 290 (2011).

within 5 days of the landlord's receipt of the tenant's request for the return of personal property.

In this case, there is no evidence that IOC requested storage fees before the claim was filed against it. Rather, the first time storage fees were requested was in the counterclaim asserted in IOC's answer. IOC did not request storage fees within the timeframe required by the Act. Accordingly, this court affirms the district court's judgment rejecting IOC's claim for storage fees.

### 4. Failure to Join
### Indispensable Parties

IOC assigns as error on appeal that the district court erred in failing to add Chol; CNBA; and the Kleinschmits, doing business as Millard Electronics, as necessary and indispensable parties. This argument has no merit.

The code of civil procedure provides that if a determination of the controversy cannot be had without the presence of the parties, the court must order them to be brought into the litigation.[29] Neb. Rev. Stat. § 25-323 (Reissue 2016) codifies the concept of compulsory joinder in Nebraska, stating in relevant part:

> The court may determine any controversy between parties before it when it can be done without prejudice to the rights of others or by saving their rights; but when a determination of the controversy cannot be had without the presence of other parties, the court must order them to be brought in.

The first clause of this statute makes the inclusion of necessary parties discretionary when a controversy of interest to them is severable from their rights.[30] However, the second clause

---

[29] *Koch v. Koch*, 226 Neb. 305, 411 N.W.2d 319 (1987).

[30] *Midwest Renewable Energy v. American Engr. Testing*, 296 Neb. 73, 894 N.W.2d 221 (2017).

mandates the district court to order indispensable parties be brought into the controversy.[31]

[6] In Nebraska, it has long been held that an indispensable party is one whose interest in the subject matter of the controversy is such that the controversy cannot be finally adjudicated without affecting the indispensable party's interest, or which is such that not to address the interest of the indispensable party would leave the controversy in such a condition that its final determination may be wholly inconsistent with equity and good conscience.[32] Further, based on the distinction of parties in § 25-323, we have found that all persons interested in a contract or property involved in a suit to be necessary parties, and all persons whose interests therein may be affected by the decree in equity to be indispensable parties.[33] As such, in order for a party to be indispensable or necessary, the threshold determination that must be made is whether the party has an interest in the subject matter of the controversy.

Here, none of the listed parties can be considered necessary or indispensable, because none of them claim or have a property interest in the subject matter of this controversy. Chol; CNBA; and the Kleinschmits, doing business as Millard Electronics, never asserted any ownership interest over the property at issue. In fact, CNBA made statements disclaiming ownership. Further, IOC acknowledged in its appellate brief that it received multiple statements from Panoam indicating that Pan was the sole owner of the property. Accordingly, we find that Chol; CNBA; and the Kleinschmits, doing business as Millard Electronics, are not necessary or indispensable parties to this action, because they do not assert any interest in the personal property involved in this dispute.

---

[31] *Id.*

[32] *Id.* See, also, *American Nat. Bank v. Medved*, 281 Neb. 799, 801 N.W.2d 230 (2011); *Koch v. Koch, supra* note 29; *Johnson v. Mays*, 216 Neb. 890, 346 N.W.2d 401 (1984).

[33] *Midwest Renewable Energy v. American Engr. Testing, supra* note 30.

## 5. Appropriate Remedy
### and Damages

IOC asserts that there was insufficient evidence to support the court's award of damages and attorney fees under the Act. The Act, at § 69-2312, provides in pertinent part:

> Any landlord who retains personal property in violation of the . . . Act shall be liable to the tenant in a civil action for:
>
> (1) Actual damages not to exceed the value of the personal property if such property is not surrendered: (a) Within a reasonable time after the tenant requests surrender of the personal property . . . and
>
> (2) Reasonable attorney's fees and costs.

Because we have held that the Act applies in this case and that IOC violated the Act by unreasonably withholding Pan's personal property, Pan is entitled to actual damages for the value of his property, as well as reasonable attorney fees.

[7,8] IOC asserts, specifically, that Pan failed to prove with a sufficient degree of certainty what the fair market value of his property was. We observe that in conversion actions, the fair market value of the property for the purposes of actual damages is calculated on the date of the unlawful taking, with interest accruing thereon.[34] Further, "fair market value" is defined as the price that a seller is willing to accept and a buyer is willing to pay on the open market and in an arm's-length transaction.[35] While this is not a conversion action, the remedial provisions within the Act are rooted in the theories of conversion by seeking to restore the status quo when a landlord improperly disposes of or withholds the property of a former tenant. In accordance with these holdings and the plain language of § 69-2312(1), we find that the phrase "value of the

---

[34] See NJI2d Civ. 4.27. See, also, *Zelenka v. Pratte*, *supra* note 9; *Hickman-Williams Agency v. Haney*, 152 Neb. 219, 40 N.W.2d 813 (1950); *Oak Creek Valley Bank v. Hudkins*, 115 Neb. 628, 214 N.W. 68 (1927).

[35] Black's Law Dictionary 1785 (10th ed. 2014).

personal property" in its relation to "[a]ctual damages" is the fair market value of the property at the time the tenant's property is improperly detained by the landlord.

[9] In reviewing a judgment awarded in a bench trial of a law action, an appellate court does not reweigh evidence, but considers the evidence in the light most favorable to the successful party and resolves evidentiary conflicts in favor of the successful party, who is entitled to every reasonable inference deducible from the evidence.[36] Further, the amount of damages to be awarded is a determination solely for the fact finder, and its action in this respect will not be disturbed on appeal if it is supported by evidence and bears a reasonable relationship to the elements of the damages proved.[37] With respect to damages, an appellate court reviews the trial court's factual findings under a clearly erroneous standard of review.[38]

This court has long held that damages, like any other element of the plaintiff's case, must be pled and proved and that the burden is on the plaintiff to offer evidence sufficient to prove the plaintiff's alleged damages.[39] Evidence of damages must be sufficient to enable the trier of fact to estimate actual damages with a reasonable degree of certainty and exactness.[40] Proof of damages to a mathematical certainty is not required; however, a plaintiff's burden of offering evidence sufficient to prove damages cannot be sustained by evidence which is speculative and conjectural.[41]

---

[36] *Mays v. Midnite Dreams, supra* note 5.

[37] *Funk v. Lincoln-Lancaster Cty. Crime Stoppers, supra* note 3.

[38] *Id.*

[39] See, *Bedore v. Ranch Oil Co.*, 282 Neb. 553, 805 N.W.2d 68 (2011); *Bass v. Boetel & Co.*, 191 Neb. 733, 217 N.W.2d 804 (1974).

[40] *ACI Worldwide Corp. v. Baldwin Hackett & Meeks, supra* note 7; *Lesiak v. Central Valley Ag Co-op*, 283 Neb. 103, 808 N.W.2d 67 (2012); *Bedore v. Ranch Oil Co., supra* note 39; *O'Connor v. Kaufman*, 260 Neb. 219, 616 N.W.2d 301 (2000).

[41] *ACI Worldwide Corp. v. Baldwin Hackett & Meeks, supra* note 7.

IOC argues that there was insufficient evidence presented on the issue of fair market value to justify the district court's judgment awarding Pan $10,000 in actual damages, or approximately 50 percent of Pan's evaluation of the property. We disagree.

At trial, several documents were received into evidence related to actual damages. These documents included bank statements and receipts for the personal property at issue, as well as an exhibit that contained an itemization of the property and Pan's opinion as to its value. The itemization, along with the bank statements and receipts, including any oral testimony relevant to these documents, were not objected to by IOC.

It is well established in Nebraska that the opinion of a personal property owner is competent evidence of its value, solely because of his or her status as owner.[42] Further, additional evidence was presented at trial to bolster the district court's judgment on damages. This evidence included testimony from Pan discussing the purchase price of $30,000 pursuant to his purchase agreement with CNBA and testimony from witnesses from both sides opining as to the condition of the personal property.

In reviewing the district court's award of $10,000 in damages, and considering the evidence in the light most favorable to the successful party while resolving evidentiary conflicts in favor of that party, we find that the district court's award is not clearly erroneous. As a result, we affirm the district court's valuation of damages.

[10,11] Concerning attorney fees, the Act explicitly awards a tenant reasonable attorney fees upon improper rejection of a request for the return of personal property by a landlord.[43] In Nebraska, we have held that when an attorney fee

---

[42] See *Peck v. Masonic Manor Apartment Hotel*, 203 Neb. 308, 278 N.W.2d 589 (1979).

[43] § 69-2312(2).

is authorized, the amount of the fee is addressed to the trial court's discretion, and its ruling will not be disturbed on appeal absent an abuse of discretion.[44] Judicial abuse of discretion exists when the reasons or rulings of a trial judge are clearly untenable, unfairly depriving a litigant of a substantial right and denying just results in matters submitted for disposition.[45] An award of attorney fees involves consideration of such factors as the nature of the case, the services performed and results obtained, the length of time required for preparation and presentation of the case, the customary charges of the bar, and general equities of the case.[46] If the contents of the record show the allowed fee not to be unreasonable, then that fee would not be untenable or an abuse of discretion.[47]

In this case, Pan produced evidence of his attorney fees by way of an affidavit by his attorney. This evidence was neither objected to nor argued against at the trial court level. The affidavit unambiguously details $14,151.49 in fees pursuant to the litigation of the case between Pan and IOC. Therefore, we find that the district court was within its discretion in awarding Pan $10,000 in attorney fees.

## VI. CONCLUSION

For the reasons stated above, the lower court's decision in this case is affirmed.

AFFIRMED.

---

[44] *ACI Worldwide Corp. v. Baldwin Hackett & Meeks, supra* note 7.

[45] *Id.*

[46] *Id.*

[47] See *Garza v. Garza*, 288 Neb. 213, 846 N.W.2d 626 (2014) (citing *Boamah-Wiafe v. Rashleigh*, 9 Neb. App. 503, 614 N.W.2d 778 (2000)).